Whaley, Chief Just-ice,
delivered the opinion of the court:
Plaintiffs entered into a contract with the defendant on March 22, 1929, to “furnish labor and materials, and perform all work required for tunnel, canal lining and structures, as described in Schedule No. 3 of Specifications No. *174 484, North. Branch Canal, Yakima (Kittitas Division) Project — Washington,” for a consideration of $345,878.25, the work to commence within 30 calendar days after date of receipt of notice to proceed and to be completed within 600 calendar days from that date. The contract was on the approved standard Govermnent form for construction work and the specifications were attached thereto.
The contract price was made up of estimated quantities of material, except for grout connections and electrical outlets, at specific unit prices, and the total consideration was variable.
The work consisted of a concrete-lined circular pressure tunnel with an internal diameter of 111 inches and an over-all length, including inclined shafts, of approximately 3,596 feet. It was designed to carry water from the south side of the Yakima Elver to the north side of the river for the irrigation of lands of the Kittitas Project and was to go down through the rock under the river about 160 feet below the river bed and to withstand an unbalanced hydrostatic head of about 350 feet. This undertaking was under the Bureau of Keclamation.
Previous to advertising for bids, the Government engineers had made core borings at the site of the work which showed the character of the soil and rock through which the tunnel would go and, as a result of these borings, the Government engineers had concluded that the tunnel would be of rock which could withstand the hydrostatic pressure inside the tunnel which would be exerted against practically a solid wall of rock in all directions.. The specifications were made and the tunnel was designed to fit this situation. With the exception of a few instances the design required an unreinforced concrete lining of approximately 15 inches thick on the outside of the tunnel. The inside diameter of the tunnel was to be 9 feet 3 inches.
Plaintiffs commenced work in April 1929 by sinking a -vertical shaft in the central portion of the projected tunnel in order that the work might be prosecuted in both directions. After about 6 months’ work and some 1,200 feet of the tunnel had been driven, the Government engineers *175 determined tbat the tunnel would have to be redesigned because of the relatively unstable materials surrounding the tunnel in order to take care of the hydrostatic pressure. Accordingly, new plans and drawings were made so as to provide for reinforced linings of 30 inches where the original contract provided for only 15 inches. This also required the excavation of a larger amount of unstable material so as to provide for the extra reinforced concrete. It required also additional reinforced steel and certain timber bracings. These changes were radically and materially different from the original design contemplated by the specifications and on which the contract had been executed and grew out of conditions unknown to and not contemplated by either party when the contract was entered into. The extent of these unforeseen conditions which required these changes, could only be determined as the work progressed and necessarily required additional time for completion. At the time the additional work was ordered the contracting officer did not issue a written change order under Article 3 of the contract but orally instructed the contractors to comply with the new design and the work entailed thereunder as the project progressed. The contractors obeyed the oral orders of the contracting officer and complied with the new design and were paid by the contracting officer according to the unit prices as called for in the original contract. These conditions continued from the time of the changed plans in this indifferent and unsatisfactory way and the work proceeded until October 30, 1930, at which time the contracting officer forwarded a change order to the plaintiffs in which was contained the unit prices of the original contract on some of the items and estimated prices for other items in connection with the' additional work. The increased price as allowed by the contracting officer was $106,597.53 and the plaintiffs were given an additional 150 days in which to complete the contract.
The completion date of the contract was on or about December 3,1930, and, before the forwarding of the proposed change order, no orders for an extension of time had been granted *176 by the contracting officer although this additional work, occasioned by the new design, necessarily involved additional time for completion. In a letter written by the contracting officer transmitting the change order plaintiffs were instructed to sign the change order, if it was satisfactory, and if it were not they were instructed to return it without signature but with a statement as to the items to which exceptions were taken. The plaintiffs retained this change order until November 25, 1930, when they returned it as “satisfactory” and “accepted.”
Under the terms of the contract, where extra work .involved more than $500, it was necessary to receive the approval of the Assistant Secretary of the Interior, and this approval was not obtained until December 29, 1930.
On May 8,1931, plaintiffs wrote a letter to the contracting officer in which it was stated that they had been subjected to heavy losses on the contract and asked to be rewarded for the work as done by them. They further stated that the reason for signing the change order was their financial embarrassment because of their attempt to complete the work and their fear of having liquidated damages assessed against them after the completion date of December 3, 1930, by reason of the fact that no extension of time had been given by the contracting officer other than that stated in the written change order.
The work was completed on June 6, 1931.
The contracting officer entertained the claim, as made by the plaintiffs in their letter of May 8, 1931, but denied it. The contracting officer did, however, notify the plaintiffs on July 13, 1931, that they had the right to appeal from his decision to the Secretary of the Interior and that they could make an appeal within 30 days.
Plaintiffs filed an appeal with the Secretary of the Interior on August 11, 1931, which was within the 30 days from the decision of the contracting officer. The Secretary of the Interior entertained the appeal and rendered a decision on December 7, 1932, in which he held that there had been an enormous increase in quantities of excavation, concrete, and reinforcing steel and that the order for changes had been signed by the contractors under duress and the change order was therefore void.
*177 The Secretary of the Interior had an audit made of plaintiffs’ work under the changed conditions and on June 23, 1933, rendered a decision in which he found that plaintiffs were entitled to an additional amount of $92,202.06, as an equitable adjustment on account of increased work performed.
This sum was vouchered by the contracting officer for plaintiffs’ signature and release and, upon its execution by the plaintiffs, the voucher was forwarded to the General Accounting Office for settlement. On March 22,1934, it was disallowed by the Comptroller General on the ground that the appeal to the Secretary of Interior had not been taken within the agreed time.
Plaintiffs contend that, owing to the material changes in the contract, they were entitled not only to an equitable adjustment but also to certain additional amounts which were incurred in the preparation and execution of the first part of the contract. We do not seriously consider that the plaintiffs have any claim for extra allowances for interest on capital investments or interest on capital borrowed from banks. Plaintiffs undertook the work under the oral change order and are confined to the terms of the contract under these conditions.
The defendant contends that when the plaintiffs accepted the change order, as satisfactory, there was an expressed contract made between the parties as to the additional work to be performed and which was binding on both. We do not consider this a valid contention for the reason that there was a total lack of consideration and there is nothing in the contract requiring an acceptance of a change order by the contractors. The contract expressly provides, under Article 3, that the contracting-officer can issue change orders under certain conditions.
Article 3 of the contract reads as follows:
Changes. — The contracting officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings and (or) specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and *178 the contract shall be modified in writing accordingly. No change involving an estimated increase or decrease of more than Five Hundred Dollars shall be ordered unless approved in writing by the head of the department or his duly authorized representative. Any claim for adjustment under, this article must be asserted within ten days from the date the change is ordered, unless the contracting officer shall for proper cause extend such time, and if the parties cannot agree upon the adjustment the dispute shall be determined as provided in Article 15 hereof. But nothing provided in this article shall excuse the contractor from proceeding with the prosecution of the work so changed.
There can be no doubt that the change order was within the general scope of the contract and it appears to have been regularly issued, after some vacillation and hesitancy on the part of the contracting officer as to the necessity for it and the additional allowances for the items of additional work and material.
The contractors from the time the work was redesigned and before any written change order was issued carried out the redesigned work and complied with the oral change order without protest or cessation of the work.
If the compliance of the contractors with the oral order was not under .duress, certainly .their acceptance of the written change order could not be said to have been under duress. During all this time. between the commencement' of the redesigned work, which called for additional material, and the date of the issuance and acceptance of the written change order, no protest or intimation of duress is found in the record. It was not until the appeal was taken to the Secretary of the Interior that duress was alleged.
We cannot find from the record that any duress was exerted upon the plaintiffs. However, the written change order was not agreed upon by the parties in terms of items and amounts when it was drawn up by the contracting officer; and, as the time, for completion of the contract was drawing to an end and additional work necessarily required additional time which had not been granted , by the contracting officer, indirect and seeming imposition of liquidated damages was before the contractors and may *179 have been the controlling force which impelled them to agree to signing the written change order as sent to them by the contracting officer. From subsequent events the contracting officer entertained doubt as to the amounts in the written change order and the feeling that perhaps the plaintiffs had not received all to which they were entitled.
Under the terms of the contract, the .plaintiffs had 10 days in which to assert a claim for adjustment of the change order. They did not assert such a claim within the time limit but after some months had elapsed ■ they filed with the contracting officer a letter asking for additional compensation. This request would have been barred and out of time had not the contracting officer entertained it, passed upon it, denied it, and informed plaintiffs that they could appeal to the Secretary of the Interior. Under Article 3 of the contract which provided for the changes, the contracting officer had the right to extend the time in which to assert a claim for adjustment of the change order, and therefore, when the request of the. plaintiffs was. received and acted upon, the 10-day provision was waived by the contracting officer and the time extended within which to take an appeal.
Plaintiffs did take an appeal within the 30 days prescribed by Article 15 of the contract and therefore the Secretary of the Interior had the right to pass on plaintiffs’ claim as presented to the contracting officer.
Article 15 of the contract reads as follows:
Disputes. — Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor within thirty days to the head of the department concerned, whose decision shall be final and conclusive upon the parties thereto as to such questions of fact. In the meantime the contractor shall diligently proceed with the work as directed.
Under Article 3 of the contract where the amount caused by . the changes made an increase due under the contract or in the time required for its performance, an equitable adjustment should be made to the contractor and the contract *180 modified in writing accordingly. This modification in plaintiffs’ contract involved an amount of over $500 and bad to be approved by the head of the department or his authorized representative. The head of the department in this case was the Secretary of the Interior under whom the Eeclamation Bureau operated.
The Assistant Secretary of the Interior was the authorized representative of the Secretary of the Interior and he found the equitable adjustment to be $92,202.06. Under Article 15 of the contract all decisions of the head of the department on questions of fact were final and conclusive.
The amount of equitable adjustment having been found by the head of the department, and a thorough examination of the record having been made bjr us, we are of the opinion that the amount so found is a fair and equitable adjustment and should not be disturbed.
The plaintiffs are entitled to l'ecover the sum of $92,202.06.
It is so ordered.
LottletoN, Judge; and GreeN, Judge, concur.
Whitaker, Judge, took no part in the decision of this case.