Whitaker, Judge,
delivered the opinion of the court:
I
The contract between the plaintiffs and the defendant for the building of alterations to the Emsworth Dam on the Ohio Biver required plaintiffs to use the old dam as the downstream arm of the cofferdam already constructed and those to be constructed by the plaintiffs. Plaintiffs insist that the defendant thereby impliedly warranted that this dam was sufficient for this use, but that it was discovered that the old dam had holes at the bottom of it which made it impossible to use it for this purpose. When this condition was discovered, the defendant, after consultation with the plaintiffs, issued change order No. 1 providing for the building of a steel sheet cut-off wall one foot upstream from the old dam and to fill in the intervening space with concrete. While this work was being done plaintiffs were delayed in the performance of their' original contract, resulting, they allege, in damage to them, measured by .the reasonable rental value of their plant, inescapable overhead and labor made idle.
Defendant defends on the ground that when this condition was discovered plaintiffs agreed with it on a modifica *109 tion of the original contract calling for the payment of approximately $110,000, in addition to the original sum, and that plaintilfs are bound thereby.
We think this is a good defense. When it was discovered that the old dam could not be used as had been intended, defendant proposed to modify the contract to provide for the building of this cut-olf wall. Plaintilfs, instead of claiming defendant had breached its contract and standing on their rights arising from the breach, consented to the modification of the contract and proceeded with the work.
The change order providing for this additional work, after reciting the unforeseen condition that had been discovered, stated “it is necessary and in the best interest of the United States to modify said contract in certain particulars as follows: * * *” [Italics ours]. It also provided, “It is further understood and agreed that all other items and conditions of said contract shall be and remain the same”; and the change order concluded,
Therefore, if the foregoing modification of said contract is satisfactory, please note your acceptance thereof in the space provided below. [Italics ours.]
This was accepted by the plaintiffs in these words:
The foregoing modification of said contract is hereby accepted. [Italics ours.]
The contract as modified was the entire agreement between the parties, embracing all of the undertakings on each side to be performed. The contract as modified has not been breached.
Indeed, when the original contract was entered into, the parties realized that some such modification might be necessary. Article 4 provides that if “subsurface and (or) latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications” are discovered, the contracting officer shall “make such changes in the drawings and (or) specifications as he may find necessary,”' and “any increase or decrease of cost and (or) difference in time resulting from such changes shall be ad *110 justed as provided in article 3 of this contract.” Article 3 provides:
* * * If such, changes cause an increase or decrease in the amount' due under this contract. * * * an equitable adjustment shall be made and the contract shall be modified in writing accordingly. * * *
The increase or decrease of cost referred to is the increase or decrease of cost for doing the entire work, which, of course, would include any expenses to which the plaintiffs had been put by reason of a change in the plans and specifications, whether from delay or otherwise. The modification, agreed to by both parties on January 24, 1936, called for an estimated additional payment of $110,159.66. This ■additional sum, according to the express terms of the contract, was supposed to represent what the parties considered “an equitable adjustment” on account of the entire “increase or decrease of cost * * * resulting from such changes.”
The plaintiffs evidently understood that the additional sum to be paid was intended to cover the entire increase in cost, whether from delay or otherwise, because they made no claim for any additional compensation until over a year later when their attention happened to be directed to an opinion of this court in Karno-Smith Co. v. United States, 84 C. Cls., 110, wherein it was held that a contractor was entitled to. damages where the defendant had failed to fulfill its agreement to furnish a suitable foundation on which a building was to be erected. In their claim they say:
This claim is presented in accordance with the decision of the Court of Claims of the United States filed December 7,1936, holding that under circumstances such as exist in this case the contractor is entitled to be compensated for the losses that he has suffered. We have prepared the claim in strict accordance with the decision in that case, (see article Engineer News Record page 256-Feb. 18-1937).
It is clear that the claim now presented is an afterthought, and that the plaintiffs understood at the time they agreed to the change order that the sum therein stipulated was to cover the entire increase in cost.
*111 Moreover, it appears from the contracting officer’s finding on this claim that, while the additional sum “included no definite provision for payment for idle equipment and labor that was forced to stand by,” “it appears that you have not been put to additional expense under change order No. 1, due to idle plant, labor, and overhead, but that the change order allowed you $4,275.47 in excess of your actual cost for these items.”
This case is clearly distinguishable from the cases of Karno-Smith, Co. v. United States, supra; Rust Engineering Co. v. United States, 86 C. Cls. 461; and Charles Thompson, et al. v. United States, 91 C. Cls. 166.
In the case of Karno-Smith Co. v. United States, supra; there was no agreement by the plaintiff for a modification of the contract. Payment was made for the extra work done,, but it was not accepted by the plaintiff in full for all sums; due under a modified contract. The findings show that the sum was paid only to cover the extra work, and that the plaintiff protested to the defendant against the furnishing, of the defective foundation immediately upon this condition being discovered.
In Rust Engineering Co. v. United States, supra, the findings state expressly—
* * * The additional price named in such change orders and paid covered only the additional cost of the excavation work and materials made necessary by the enlarged footings and included nothing for the additional and extra costs caused by and directly resulting from the delay for which plaintiff was in no' wise responsible.
‡ $ $ $
* * * It was understood between the parties that plaintiff’s claim for these increased costs, because of the delays, would be considered later.
There was no such understanding in this case. The-change order was accepted as a modification of the entire-contract, and provided for the payment of the entire increase in costs due to the changes made.
In the case of Charles Thompson, et al. v. United States,, supra, the plaintiffs did accept the change order; but, as- *112 pointed out in the opinion, since it involved more than $300, it had to be approved by the head of the department. When the plaintiffs appealed to the head of the department for a sum in addition to that stated in the change order, he ruled that they were entitled to an additional sum of $92,202.06. Since the change order did not become binding until approved by the head of the department, and since the head of the department held that the plaintiffs were entitled to this additional sum, this court granted judgment for this amount.
II
What has been said above answers plaintiffs’ claim for damages on account of the change in the plans and specifications increasing the height of the piers to be constructed and the number of piles to be driven. These changes were agreed to by the plaintiffs in the same words as was the foregoing change.
Ill
The delay in the doing of the work specified on the lock wall was no fault of the plaintiffs and was not within contemplation of the contract, and the plaintiffs are, therefore, entitled to recover whatever damages they suffered thereby. They claim damages therefor in the sum of $1,685.60, but the contracting officer has found that the rental value of the equipment made idle was $183.12.
Article 15 of the contract provides:
* * * all disputes concerning questions arising under this contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decisions shall be final and conclusive upon the parties thereto as to such questions. * * *
There was no dispute as to the extent of the delay, nor as to the equipment made idle. The sole difference between the parties was the rental value of the equipment. This rental value has been found by the contracting officer to be $183.12. This is a question of fact, the contracting officer’s decision *113 on which, under the terms of the contract, is final. The plaintiffs are entitled to recover under this claim the sum of $183.12.
IV
On October 24, 1936, the plaintiffs presented to the contracting officer a claim for additional compensation because of the increased costs to which they had been put by reason of the alleged refusal of the contracting officer to permit them to remove certain portions of the lock wall by blasting. In their claim they stated that they were prohibited from employing this method by the Government’s engineers and inspectors, for the reason that it might result in damage to the Government property and work which had already been constructed.
When plaintiffs’ claim on this account was presented to the contracting officer he found:
The procedure used by the contractor was not required by this office. It was mutually agreed upon by the contractor and Resident Engineer on the work as a method that would not result in damage to the lock wall.
(Under paragraph 1-13 of the specifications the plaintiffs were liable for any damage to the work or defendant’s property.) On appeal this finding was affirmed.
Moreover, under paragraph 1-24 of the specifications it is provided:
If the contractor considers any work required of him to be outside the requirements of the contract, or considers any record or ruling of the inspectors or contracting officer as unfair, he shall ask for written instructions or decision immediately and then file a written protest with the contracting officer against the same within 10 days thereafter or be considered as having accepted the record or ruling.
No such protest was filed.
The plaintiffs are clearly not entitled to recover on this item.
Y
In the flood of March 17,1936, some of the sheet steel piling installed by the plaintiffs under change order No. 1 was damaged and had to be removed, repaired, and reinstalled. The *114 plaintiffs claim compensation therefor on the theory that the work done under this change order was not governed by the provisions of the original contract. This position is clearly untenable. The change order modified the contract so as to. provide for the doing of additional work. After the issuance of the change order and its acceptance by the plaintiffs, the contract between the parties embraced the entire work to> be done, both that originally called for and that called for by the change order. The change order provided expressly :■
It is further understood and agreed that all other terms and conditions of said contract shall be and remain the same.
Clearly, the work to be done under the change order was governed by the provisions of the contract as modified by it.. This contract, in paragraph 1-13 of the specifications, provided that damage done to the work “by flood * * * shall be made good by the contractor without expense to the United! States.”
The plaintiffs are not entitled to recover under this item..
VI
Plaintiffs combine in their petition an action for alleged’ breaches of the contract by the defendant and an action under-the Act of July 23, 1937 (50 Stat. 533, chapter 520), saying' the defendant failed to supply qualified labor under the labor-clauses of the contract, which resulted in excess cost to them.. No point is made of this misjoinder of causes of action, but,, while such pleading is subject to criticism, we nevertheless, proceed to discuss plaintiffs’ claim thereunder.
The Act of July 23,1937, confers on this Court jurisdiction, of claims of contractors having contracts for the construction, of locks and dams on the Mississippi River and its tributaries,—
* * * by reason of the Government having promulgated and enforced, as alleged, due, as alleged, to the-national emergency and subsequent to the dates of the-several contracts, rules, and regulations referred to in the several contracts and misinterpreted and wrongfully enforced or disregarded, as alleged, and rules and regu *115 lations not referred to in and inconsistent with the respective contracts, as alleged, which rules and regulations, the enforcement or disregard thereof, deprived the contractors of normal control of their personnel, as alleged, and further by reason of the Government having failed, as alleged, to supply qualified labor under the labor clauses of the respective contracts, resulting in excess costs, including general overhead and depreciation, to the said several contractors on their respective contracts, as alleged; * * *
The plaintiffs’ claim is based both upon the quantity and quality of the labor furnished. With reference to the quantity, this has been decided by the contracting officer, from whose decision the plaintiffs took no appeal. He found that between May 3 and May 23, 1936, the plaintiff was delayed a period of 5 days on account of the failure to furnish the labor necessary. Except for this period, he found that sufficient labor had been furnished. On account of this delay change order No. 7 was issued extending the time for the performance of the contract 5 days, but the contracting officer ruled that no additional compensation should be paid on account of the delay. This change order was accepted by the plaintiffs.
The parties are not in entire agreement as to the quality of the labor furnished. Plaintiffs’ day superintendent said that they got a “pretty poor type” of labor, and that it was not very well qualified. The night superintendent said he would not consider the labor qualified “because you had to watch them closely.” About sixty or seventy per cent of them, he said, “were qualified enough that I could tell them what to do and they would know what to do without me standing around showing them what to do.”! On the other hand, the Chief Engineer of the District, in answer to a question as to the efficiency of the men on the job, answered, “I can say that the work appeared to be very well handled and the job was run in an unusually orderly manner,” and he said that this was impossible unless they had had “at least average efficiency in (the) workers.” He testified that in his opinion the labor on the job was average. On cross-examination he testified that what he meant by the labor on *116 the job being average was that it was the average kind of labor that one got from the unemployment office. . Patt, the resident engineer employed by the Government, also thought that the labor furnished wias about on a par with other jobs he had worked on.
No doubt the labor was not the best that could have been obtained. It was obtained from the relief rolls, and while there were some excellent men on the relief rolls during the period in question, it is common knowledge that the majority of them were not of the most efficient type. That the contractor would have to use labor from the relief rolls was stated in the contract, and he undoubtedly took this into consideration in putting in his bid. We do not think that the Congress in the passage of the Act of July 23, 1937, intended to compensate a contractor for increased cost on account of using relief roll labor, which he knew he would have to use, unless the efficiency of such labor was below what he had a right to expect from such a source. The Act gives the contractor the right to recover by reason of the failure of the government to supply “qualified labor under the labor clauses of the respective contracts.” This does not mean the most highly qualified labor, nor labor of the qualifications that might be secured if the contractor were free to secure it from any source, but only labor of such qualifications as the contractor had a right to expect from the relief rolls. The defendant’s Chief Engineer testified on cross-examination that the labor furnished was “the average kind of labor you got from the unemployment office.” The plaintiffs do not deny that this is so. Under such facts we do not think the defendant is liable under the Act of July 23, 1937. Congress did not intend to compensate a contractor for an expense he must have anticipated.
The Act grants relief to contractors where the Government did one of two things: (1) it deprived the contractor of normal control over his personnel; and (2) it failed to supply him with qualified labor under the labor clauses of the respective contracts. It was said that contractors had been deprived of normal control over their personnel, because the Government had misinterpreted and wrongfully enforced or disregarded rules and regulations referred to in *117 the contracts, or had enforced rules and regulations which were not referred to in the contracts and were inconsistent therewith. The report on the bill of the Committee of the House, which was adopted by the Senate Committee, proposed the enactment of the bill altogether on the ground that in the enforcement of labor rules the Government misinterpreted the contracts and enforced the rules “in a way inconsistent with the tenor of the contracts.” The report says, “Generally speaking, these rules required the contractors to draw their labor personnel from the vicinity of the projects without regard to the fact that such vicinities were far from cities, sparsely settled, and did not have the skilled labor required for proper performance by the contractors.”
The report of the War Department on the bill, which is quoted in the report that the House Committee, calls attention to the fact that the enforcement of these rules possibly resulted “in many cases, in excess costs which could not have been anticipated.” [Italics ours.] And the Committee’s recommendation is grounded on the fact that these “losses had been imposed upon the contractors because of the conditions obtaining under the regulations which could not home been anticipated.'1'1 [Italics ours.]
This report makes it all the more plain, it seems to us, that it was intended to give a contractor relief for only those losses which he coiild not have anticipated. Therefore, if he secured from the relief rolls that character of labor which he reasonably could have expected that he would receive from them, he is not entitled to recover. The proof in this case shows the labor received was average relief roll labor. There is no showing that any rules or'regulations were enforced in this vicinity which the contractors did not know about in advance, or that the labor supplied them was of a quality below that they had a right to expect. Under such circumstances, we do not think the plaintiffs are entitled to'recover on this item of their claim.
It results that the plaintiffs are entitled to recover of the defendant the sum of $183.12. It is so ordered.
Littletok, Judge; and Whaley, Chief Justice, concur.