Littleton, Judge,
delivered the opinion of the court:
Plaintiffs’ total claim of $136,431.38 is made up of an alleged cost of $60,257.50 due to inefficiency of alleged unqualified labor supplied by the defendant and paid for by plaintiffs; excessive and unnecessary costs for overhead expense in the amount of $32,032.00 at $246.40 a day for the! period of 130 days’ delay, alleged to have been caused by the defendant which, it is alleged, was due to inefficient labor, unreasonable interference with the work and unreasonable inspection and supervision by the defendant’s inspectors and engineers; alleged unnecessary expense and loss of $2,564.45 for damage to plaintiffs’ machinery and the operation thereof by allegedly inexperienced and unqualified men supplied by the defendant through its National Eeemployment Service and employed by plaintiffs; alleged loss and damage of $11,049.68 for alleged excessive wages paid to laborers, known as “sandhogs,” due to alleged excessive hourly rates of pay fixed by the contracting officer for these employees of the plaintiffs; alleged loss and damage of $1,187.92 for alleged excessive wages paid to soft-ground miners due to alleged excessive hourly rates of pay therefor fixed by the contracting officer; alleged loss and damage of $2,682.98 due to the alleged unauthorized action *196 of the contracting officer in classifying carpenters employed by plaintiffs as skilled laborers instead of semi-skilled laborers; alleged damage of $5,000 for alleged increased expense of removing steel-sheet piling during high water due to the alleged interference by the defendant’s agents and officers with the earlier removal of such piling at less expense; alleged loss of $1,856.80 representing an alleged unauthorized charge against plaintiffs by the defendant for wasted cement, and $19,800 liquidated damages deducted and withheld by the defendant under Article 9 of the contract for 198 days’ delay in completing the contract, all of which delays, plaintiffs allege, were caused by high water and the arbitrary and unreasonable actions, rulings, and requirements' of the inspectors and engineers of thei defendant.
The record in this case consists in part of 3,700 pages of oral testimony, all of which, together with the documentary evidence submitted, has been carefully studied and considered and, independent of the failure of plaintiffs to comply with certain specific requirements of the contract and specifications with reference to timely and proper protests, claims, and appeals hereinafter mentioned, the evidence submitted by plaintiffs when considered in connection with the evidence submitted by the defendant does not sustain any of the claims made. The record evidence, as a whole, shows that the defendant did not by any act, conduct, or ruling of its agents, inspectors, or engineers breach any provision of the contract with plaintiffs. The true facts established by the record and essential to the consideration and disposition of the claims and contentions advanced by plaintiffs are set forth in the findings. Plaintiffs’ troubles and difficulties in the performance of the contract and the fulfillment of the provisions of the specifications thereof and the delay in the completion of the contract, with the exception of the 52 days allowed by the defendant for unreasonably high water and the strikes, and of 15 days by reason of an extra work order, were due in part to inadequate equipment; in part, and chiefly, to improper planning supervision and management on the part of the contractors and their authorized representatives, and, in some degree, to the lack of *197 experience and industry on the part of the men employed by plaintiffs and directly engaged in performance of thei physical work required by the contract and specifications. The evidence does not establish that there was any material delay attributable to the defendant through the acts of the contracting officer or his representatives.
Article 18 of the contract provided as follows:
Wages, (a) All employees directly employed on this work shall be paid just and reasonable wages, which shall be compensation sufficient to provide, for the hours of labor as limited, a standard of living in decency and comfort. The contractor and all subcontractors shall pay not less than the minimum hourly wage rates for skilled and unskilled labor as follows:
Skilled labor_$1.20
Unskilled labor- .50
Eates for semiskilled labor shall be fixed so as to fall between the minima fixed for skilled and unskilled labor, and shall bear the normal relation to these as exists in the locality. * :!: *.
(d) The above-designated minimum rates are not to be used in discriminating against assistants, helpers, apprentices, and serving laborers who work and serve skilled journeymen mechanics and who are not to be termed as “unskilled laborers.”
(e) The minimum wage rates herein established shall be subject to change by the Federal Emergency Administration of Public Works on recommendation of the Board of Labor Eeview. In event that the Federal Emergency Administration of Public Works acting on such recommendation establishes different minimum wage rates, the contract price shall be adjusted accordingly on the basis of all actual labor costs on the project to the contractor, whether under this contract or any subcontract.
(f) The Board of Labor Eeview shall hear1 all labor issues arising under the operation of this contract and as may result from fundamental changes in economic conditions during the life of this contract. Decisions of the Board of Labor Eeview shall be binding upon all parties.
Article 15 provided as follows:
All labor issues arising under this contract which cannot be satisfactorily adjusted by the contracting officer shall be submitted to the Board of Labor Eeview.
*198 The evidence shows that the contracting officer acted reasonably and within the scope of the above-quoted provision of the contract in classifying the laborers employed by plaintiffs as skilled, semi-skilled, or common, and in fixing the scale of wages of soft-ground miners and sandhogs engaged in excavation work within the caissons while working in open caissons or under air pressure. Plaintiffs made no written protest or claim within the time as required by the contract with reference to this ruling and action by the contracting officer, and plaintiffs did not submit nor ask that the classifications and wage scales fixed by the contracting officer be submitted to the Board of Labor Keview.
Article 19 of the contract provided as follows:
(a) Labor preferences. — Preference shall be given, where they are qualified., to ex-service men with dependents, and then in the following order: (1) To citizens of the United States and aliens who have declared their intention of becoming citizens, who are bona fide residents of the political subdivision and/or county in which the work is to be performed and (2) to citizens of the United States and aliens who have declared their intention of becoming citizens, who are bona fide residents of the State, Territory, or district in which the work is to be performed: Provided, That these preferences shall apply only where such labor is available and qualified to perform the work to which the employment relates.
(b) Employment services. — To the fullest extent possible, labor required for the project and appropriate to be secured through employment services shall be chosen from the lists of qualified workers submitted by local employment agencies designated by the United States Employment Service: Provided, however, That organized labor, skilled and unskilled, shall not be required to register at such local employment agencies but shall be secured in the customary ways through recognized union locals. In the event, however, that qualified workers are not furnished by the union locals within 48 hours (Sundays and holidays excluded) after request is filed by the employer, such labor may be chosen from lists of qualified workers submitted by local agencies designated by the United States Employment Service. In the selection of workers from lists prepared by such employment agencies and union locals, the labor preferences provided in section (a) of Article 19 shall be observed.
*199 The record does not establish that the defendant violated or breached this article of the contract in sending to the plaintiffs when requested by them through the National Reemployment Service Office of the Department of Labor near the location of the work laborers, skilled, semi-skilled, or common, from the list of men registered at the Reemployment Office. Plaintiffs were fully informed by the invitation for bids and the provisions of the contract and specifications submitted to them with the invitation for bids, upon the basis of which they submitted their bid for the work to be performed, as to the source from which their laborers would be secured. The record shows that the authorized and designated officials of the N. R. S. acted in good faith in administering the labor-preference provision of the contract and in cooperating with plaintiffs when referring workmen to them. The defendant did not through the National Reemployment Service Office employ men for plaintiffs, but merely referred them to plaintiffs for acceptance or rejection. Plaintiffs were the judges of the qualifications of their employees and were free to reject any man referred to them by the N. R. S. for any reason which appeared to them sufficient for rejection, or to discharge any man employed by them for incompetency, inefficiency, or for any other reason. As a final matter, the question of whether the men referred to the contractor by the Reemployment Office were qualified to perform the work required of them by the contractor, was for the determination of plaintiffs. Tf, in so investigating the qualifications and suitability of the men by the contractor, the number of rejections or dismissals disclosed that suitable or qualified laborers could not be obtained from the counties of first preference, the Reemployment Office would have called upon the state at large for labor sufficiently qualified to meet the requirements of the contractor^. This was done by the Reemployment Office with reference to a certain number of sandhogs sufficiently qualified and experienced to work under air pressure during progress of the work. Moreover, plaintiffs made no written protest as to any action, decision, or ruling of the director of the National Reemployment Service or of the contracting officer or his authorized repre *200 sentative in their administration of labor-preference pro-visionjs of the contract and no appeal was taken by plaintiffs to the Board of Labor Review or to the head of the Department concerning any dispute under the contract regarding these matters.
Article 9 of the contract relating to delays and liquidated damages therefor provided that
* * *. If the Government does not terminate the-right of the contractor to proceed, the contractor shall continue the work, in which event the actual damages for the delay will be impossible to determine and in lieu thereof the contractor shall pay to the Government as fixed, agreed, and liquidated damages for each calendar day of delay until the work is completed or accepted the amount as set forth in the specifications or accompanying papers and the contractor and his sureties shall be liable for the amount thereof: Provided,. That the right of the contractor to proceed shall not be terminated or the contractor charged with liquidated damages because of any delays in the completion of the work due to unforseeable causes beyond the control and without the fault or negligence of the contractor,, including, but not restricted to, acts of God, or of the-public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes: Provided fwrther, That, the contractor shall within 10 days from the beginning-of any such delay notify the contracting officer in writing of the causes of delay, who shall ascertain the facts- and the extent of the delay and extend the time for completing the work when in his judgment fhe findings of fact justify such an extension, and his findings of' facts thereon shall be final and conclusive on the parties-hereto, subject only to appeal, within 30 days, by the-contractor to the head of the department concerned,, whose decision on such appeal as to the facts of delay and the extension of time for completing the work shall be final and conclusive on the parties hereto.
Paragraph 20 of the specifications provided as follows:-
Liquidated damages. — The damages that may result from any delay in completion of the work by the time-agreed upon will be difficult, if not impossible, of ascertainment. If the work is not completed on or before the date fixed for its completion by the terms of the- *201 contract, the contractor shall pay to the Government as fixed, agreed, and liquidated damages the sum of one hundred dollars ($100) per day for each calendar day’s delay until the work is satisfactorily completed or until such time as the Government may reasonably procure the completion of the work by another contractor or complete the work itself. Whatever sums may be due as liquidated damages for delay may be deducted from payments due to the contractor or may be collected from the contractor or the contractor’s surety or sureties. The provision for liquidated damages shall not prevent the Government from terminating the right of the contractor to proceed in case of default, as provided in article 9 of the contract.
Paragraph 14 of the specifications provided with reference to protests as follows:
If the contractor considers any work demanded of him to be outside the requirements of the contract, or considers any record or ruling of the contracting officer or of the inspectors to be unfair, he shall immediately upon such work being demanded or such record or ruling being made, ask for written instructions or decision, whereupon he shall proceed without delay to perform the work or to conform to the record or ruling, and, within ten (10) days after the date of receipt of the written instructions or decision, he shall file a written protest with the contracting officer, stating clearly and in detail the basis of his objections. Except for such protests or objections as are made of record in the manner herein specified and within the time limit stated, the records, rulings, instructions, or decisions of the contracting officer shall be final and conclusive. Instructions and/or decisions of the contracting officer contained in letters transmitting drawings to the contractor shall be considered as written instructions or decisions subject to protest or objections as herein provided.
And Article 15 of the contract with reference to disputes and the finality of the decisions of the contracting officer and the head of the department provided as follows:
All labor issues arising under this contract which cannot be satisfactorily adjusted by the contracting officer shall be submitted to the Board of Labor Eeview. Except as otherwise specifically provided in this contract, all other disputes concerning questions arising *202 under this contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto as to such questions. In the meantime the contractor shall diligently proceed with the work as directed.
During progress of the work and until the contract was finally completed on May 21, 1935, the plaintiffs did not file any written protest, claim, or appeal, as required by Article 9 of the contract and paragraph 14 of the specifications, except a request for extension of time on account of high water in the early stage of the work. After completion and acceptance of the work, plaintiffs, on June 5, 1935, presented a written claim to the Department of the Interior at Washington, D. C., as set forth in the findings, for remission of liquidated damages deducted for delays, and for alleged loss damages and unnecessary costs substantially as claimed in this suit and upon the same grounds. Without extending the time for the making of protests and claims as required by the contract and specifications and without waiving plaintiffs’ failure so to do, the contracting officer and the head of the United States Bureau of Reclamation granted plaintiffs a conference concerning their claim and permitted them to submit written evidence and argument in connection therewith. Thereafter, the contracting officer considered the claim, made findings of fact, and denied all the claims made by plaintiffs, except that on their claim for delay in completing the contract within the time required they were excused for a period of 51 days during high water and 1 day on account of strikes, and held that $5,200 of the total liquidated damages of $19,800 charged against the contractor and deducted from the amount otherwise due under the contract should be remitted for the 52 days mentioned. Thereafter plaintiffs appealed to the Secretary of the Interior, who, without waiving plaintiffs’ failure to comply with the provisions of the contract relating to protests, claims, and appeal, made findings of fact and affirmed the decision of the contracting officer. The evidence of record does not show that any action or ruling of *203 the defendant’s inspectors or engineers immediately in charge of performance of the work called for by the contract was arbitrary, unreasonable, or grossly erroneous. The record establishes that the findings of fact and decisions of the contracting officer and the head of the department concerned in connection with the claim presented by plaintiffs after the work had been completed were in accordance with the true facts in the case and that they were not arbitrary or grossly erroneous. Plaintiffs are therefore not entitled to recover any amount in excess of $5,200 representing the amount of liquidated damages remitted by the contracting officer and approved by the head of the department. It is so ordered.
GREEN, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.