Whitaker, Judge,
delivered the opinion of the court:
Plaintiff seeks to recover additional costs incurred by it due to subsurface conditions which it alleges were materially different from those shown on the drawings or •indicated in the specifications. It also seeks ten percent profit on these additional costs. The amount thereof, in excess of the amount already paid, it alleges is $58,138.36. It also seeks to recover $12,3T5.00 for liquidated damages deducted for delay in completing the work, alleged to have been caused by these unforeseen conditions.
The contract was for the construction of a lock and dam. It provided for the payment of 15 cents per cubic yard for all common excavation. The borings made by the United States Engineer’s office indicated that the bed of the river where the lock and dam was to be constructed consisted of loam, loam and clay, sand, sand and clay, and some rock, all of which, except the rock, were classed as common excavation. Plaintiff moved to the site of the work a suction dredge which could have done the common excavation satisfactorily had the materials in the bed of the river been those indicated; but it turned.out that this dredge would not remove the materials actually in the.bed of the river. Plaintiff undertook to make the necessary adjustment of its machinery to do the work, but was unsuccessful, and finally sublet this part of the work to the Bolz Dredging Company, which had had long experience in river dredging. This company moved to the site a 15-inch electric hydraulic *52 dredge, but this dredge also was unable to do the necessary excavation. A cutter head was put on it in an effort to make it do the work, and later changes were made in this cutter head, but all without success. Finally, a dragline was resorted to.
On May 1, 1933 (the work had begun on February 12) the contractor wrote the contracting officer that unforeseen subsurface conditions had been encountered and it notified him of its intention to present a claim for additional compensation. The contracting officer directed the plaintiff to make borings in the riverbed to determine the nature of the materials in the bed of the river. When these bor-ings were made it was discovered that the bed of the river consisted of yellow clay mixed with blue gumbo of a tough texture. It also consisted of some hardpan of a sand composition.
Upon discovering this, the contracting officer requested the plaintiff to submit to him its conception of what an equitable .adjustment would be on account of these changed conditions. Accordingly, the plaintiff submitted schedules showing a “total loss” of $23,281.91 on account of the changed conditions. Upon consideration thereof, the contracting officer issued “Change Order No. 2, dated June 7, 1933” increasing the amount to be allowed for common excavation from 15 cents a cubic yard to 37y2 cents a cubic yard, and allowed 45 days additional time for the completion of the project. This change order concluded as follows:
This change order, being in excess of $500.00 in amount, does not become effective until approved by the Chief of Engineers.
Therefore, if the foregoing modification of said contract is satisfactory, please note your acceptance thereof in the space provided below.
It was accepted by the plaintiff in these words:
The foregoing modification of said contract is hereby accepted.
In returning it to the contracting officer the plaintiff wrote him as follows:
We are returning to you herewith Change Order No. 2 which has been accepted by us.
*53 We wish to, indeed, thank you for the equitable manner in which you have handled this proposition.
The change order was forwarded to the Chief of Engineers, who rejected it because it took into consideration increased costs prior to May 1, 1933, the date upon which the plaintiff had called the changed conditions to the attention of the contracting officer. The contracting officer was, accordingly, directed to revise the change order so as to take into consideration only costs incurred and to be incurred after May 1, 1933. In compliance therewith the contracting officer issued “Change Order No. 2, dated July 15, 1933” reducing the amount to be paid for excavation of “compact clayey materials” from 37% cents to 85 cents, and reducing the extension of time for completion of the work from 45 to 40 days. This amended change order was accepted by plaintiff on July 18, 1933, in the following words:
I am returning to you herewith change Order No. 2 which has been altered in accordance with your letter of July 15th and which has been accepted by us.
However, the Chief of Engineers, on the recommendation of the Division Engineer at St. Louis, rejected this change order, and reduced the price to be paid for this excavation to 23 cents per cubic yard. Thereupon, the contracting officer prepared a new Change Order No. 2, dated August 30, 1933, providing for 23 cents per cubic yard, and extending the time for completion 40 days. This change order was rejected by the plaintiff, who advised the contracting officer of its intention to appeal therefrom to the Secretary of War. In its appeal plaintiff not only appealed from the change order dated August 30, 1933, but stated that it had discovered that it had been very unfair to itself in accepting the original change order of June 7, 1933, providing for 37% cents per cubic yard, and asked that “this -whole matter be reviewed and another Change Order be awarded us in the light of the new information now available.”
Upon consideration thereof the Chief of Engineers and the Secretary of War decided that the price agreed upon in the change order of July 15, 1933, of 35 cents per cubic *54 yard, was equitable, and it was, accordingly, approved and sent to the contracting officer for delivery to plaintiff, which was done on November 1,1938.
At that time plaintiff did not indicate, whether it accepted or rejected this change order, but sometime between November 14 and November 16, 1933, plaintiff executed without protest a voucher sent to it by the defendant for $15,588.40 for 77,942 cubic yards excavated between May 1, 1933 and October 31, 1933, calculated at the rate of 35 cents per cubic yard, in accordance with the approved change order dated July 15, 1933. Subsequently, the plaintiff accepted without protest and cashed a check for this amount. Later, in November, December, January, February, March, April, May and June, it executed vouchers based on 35 cents a cubic yard for excavation, and payments were made accordingly, and were accepted by the plaintiff without protest. In a letter to the contracting officer dated December 23, 1933 the plaintiff admitted that it had agreed to the change order dated July 15, 1933 after it had been approved by the Chief of Engineers and the Secretary of War.
This change order constituted a modification of the contract, and as so modified it has been fully performed by the defendant, with the possible exception now to be considered. Seeds & Derham v. United States, 92 C. Cls. 97, 312 U. S. 697.
During the unwateriiig of the cofferdam for the lock 18,650 cubic yards of the. bank of the excavation caved in and had to be removed by the plaintiff. On November 23, 1933 the plaintiff wrote the contracting officer claiming that payment should be made for excavating and removing this caved-in material. This claim was rejected by the contracting officer. No appeal from this action was taken to the head of the department within the 30 days required by article 15 of the contract, but the plaintiff did advise the contracting officer that it would insist upon being paid for the excavation of this caved-in material; and.on February 27, 1934 it made a second demand on the contracting officer therefor. This demand was rejected by the contracting officer on March 8, 1934, and on March 23, 1934 the plaintiff notified him of its *55 intention to appeal, and on April 3,1934 it took its appeal to the Secretary of War. Upon receipt thereof the Chief of Engineers and the Secretary of War reconsidered the entire case, not only whether or not the plaintiff should be paid for removing the caved-in material, but also whether or not change, order No. 2, dated July 15, 1933, was in fact an equitable adj ustment. Upon consideration thereof they concluded that the plaintiff had suffered increased costs in excess of those paid it under change order No. 2 dated July 15, 1933, and they, accordingly, recommended to the Comptroller General, the work having been concluded, that, in addition to the sum already paid, the plaintiff be paid the further sum of $22,122.99 on account of these increased costs, and that the time for completion of the contract be further extended 34 days and, accordingly, that liquidated damages in the amount of $6,800 be remitted.
Later, the Chief of Engineers forwarded to the Comptroller General for direct settlement an additional voucher for $1,600 on account of liquidated damages deducted. On October 30,1936 the plaintiff was paid the aggregate of these amounts, $30,522.99. The cost of excavating the caved-in material at 35 cents per cubic yard was $6,527.50.
Even though the defendant were obligated to pay plaintiff for the cost of removing the caved-in material, it appears that it has paid it far more than the cost thereof, in addition to the amount due under the terms of its contract as modified by change order No. 2, dated July 15, 1933.
Not only did plaintiff agree to the 35 cents a cubic yard provided for under change order No. 2 of July 15, 1933, but it agreed to the extension of time of 40 days, and it, therefore, cannot complain that liquidated damages for delay in excess of this 40 days have been deducted. However, the defendant has not insisted upon the strict letter of the contract, but, in addition, has remitted liquidated damages for 42 additional days. This it was not required to do, nor was it required to pay plaintiff $22,122.99 more than it had agreed to pay it. The defendant has not only been just to the plaintiff, it has been generous with it. More has been paid under the contract than the defendant was obligated to pay, and *56 a less amount lias been deducted for liquidated damages tban might have been deducted had the strict letter of the contract been insisted upon.
We are convinced, however, that under all the circumstances the defendant’s representatives have not only acted generously with the plaintiff, but they have been fair to the defendant’s interest. The work cost considerably more than the parties estimated when change order No. 2 dated July 15,1933 was issued, and it was right and proper under all the facts and circumstances of this case that the plaintiff be paid the additional amount paid it on October 30, 1936.
It results that the plaintiff is not entitled to recover. The petition will be dismissed. It is so ordéred.
Madden, Judge; Jones, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.