LittletON, Judge,
delivered the opinion of the court:
Plaintiff was the lowest responsible bidder under specifications and a unit price contract form to be executed by the successful bidder and the Government for the construction within the State of California of four reinforced concrete Wash Siphon structures over and along the All-American Canal. This canal and the Wash Siphon structures were a part of the facilities to be constructed in connection with the larger project known as the Imperial Dam. The Wash Siphon structures for the construction of which plaintiff was the successful bidder were designed to carry surface flood-waters over the All-American Canal in such a way as to avoid damage to the canal from such floodwaters, and/ also, to provide highway bridges over the canal. The Imperial Dam, the canal and-the wash structures, were all in the process of construction at about the same time. Plaintiff’s bid of unit prices for the various items of wot-k specified was accepted after an investigation of plaintiff’s experience and financial ability to perform the work required, and the contract form on the basis of which bid was made was signed by plaintiff December 30, 1935 and by defendant January 16, 1936. Notice to proceed was given January 20, 1936, and the work as called for by the contract and specifications was completed and accepted before the expiration of the contract date for completion September 14,1937.
The three principal items of about sixteen units of work and material required on each of the four structures were (1) excavation, (2) hauling and placing reinforcing steel, and (3) hauling, mixing and placing concrete in floor slabs and structures. Defendant furnished all reinforcing steel, cement and concrete aggregates and all other material except as set forth in paragraph 24 of the specifications (Finding 4). Plaintiff bid 30 cents per cubic yard for excavation, one cent per pound for placing reinforcing steel, $6 per cubic yard for concrete in floor slabs and $8.50 per cubic yard for concrete in structures. The excess costs incurred by plaintiff over the unit prices bid, and for which claim for damages *157 is here made, were in connection with the performance of the reinforcing steel and concrete work. On this account plaintiff seeks to recover $318,597.21 as the excess cost over its bid for concrete and $23,152.32 as the excess cost over its bid for reinforcing steel, which, together with other items of alleged general excess costs, including profit, as set forth in finding 39, total $400,666.50.
This claim for damages is based on the allegation that de- . fendant breached Article 19 of the contract in that it failed, through the National Reemployment Service office, (1) to refer skilled and unskilled relief laborers to plaintiff promptly, (2) to refer sufficient skilled and unskilled relief laborers, (3) that workmen referred were to an unusually large extent unqualified for the work for which they were requisitioned, and (4) that the relief labor referred by the employment service and used by plaintiff on the job was inefficient.
Article 19 of the contract provided in full as follows:
EmploxmeNt Services — (a) With respect to all persons employed on projects, except as otherwise provided herein, (a) such persons shall be referred for assignment to such work by the United States Employment Service, or such other employment agency designated by the Works Progress Administration, and (b) preference in employment shall be given to persons from the public relief rolls, and, except with the specific authorization of the Works Progress Administration, at least ninety per centum (90%) of the persons employed on any project shall have been taken from the public relief rolls: Provided, However, That, expressly subject to the requirement of subdivision (b), the supervisory, administrative ’ and highly skilled workers on the project, as defined in the specifications, need not be so referred by the United States Employment Service or such other employment agency designated by the Works Progress Administration.
(b) All organized labor, skilled and unskilled, when organized labor is desired and requested by the contractor, which is employed upon projects prosecuted under contract shall be supplied by the employment agency designated by the United States Employment Service or Works Progress Administration, from the membership of recognized unions, with preference, first, to those members of such unions who constitute regular employees of the contractor and who are on the *158 local public relief rolls, second, to other members of such unions who are on the relief rolls, and upon the exhaustion of union members on such rolls,- to any other members of the union. In the event, however, that qualified workers are not made available from the membership of the unions within forty-eight hours (Sundays and holidays excepted) after a request therefor is filed by the contractor, and the employment agency has notified the unions of the receipt of such request, such labor may be chosen by the contractor from other qualified workers, supplied by employment agencies designated by the United States Employment Service or Works Progress Administration.
(c) No person under the age of sixteen years and no one whose age or physical condition is such as to make his employment dangerous to his health or safety, or the health and safety of others, may be employed on the project. This paragraph shall not be construed to operate against the employment of physically handicapped persons otherwise employable where such persons may be safely assigned to work which they can ably perform.
(d) Except as otherwise specifically provided in this contract, workers who are qualified by training and experience and certified for work on the project by the United States Employment Service shall not be discriminated against on any grounds whatsoever.
Paragraph 19 of the specifications listed the skilled-labor classifications which were exempted by the Works Progress Administration from the requirements of Article 19 (a) of the contract that 90 percent of the persons employed on the project should be taken from the public relief rolls, provided the United States Employment Service certified in writing to the Bureau of Reclamation that skilled labor in such classifications was not available from relief sources. The labor classifications so specified in this paragraph are not involved in this suit.
The essential facts as established by the evidence of record and pertinent to the issues presented are set forth in the findings. Upon those facts we are of opinion that it cannot be said that defendant breached any of the provisions of Article 19 of the contract. It appears from a study of the whole record that plaintiff simply underestimated the unit prices at which it could perform the work called for with *159 relief labor at a profit. The contract and specifications were prepared under rules and regulations of the President and the Works Progress Administration issued under the Emergency Relief Appropriation Act of 1935, approved April 8, 1935.* The purpose of making the contract at the time was to provide employment for persons on the public relief rolls in the community where the work was to be performed. Plaintiff knew this, but the evidence shows that plaintiff when making its bid of unit prices for the main items of the work which, for the most part were to be performed by relief labor, failed to properly take that fact into consideration. Plaintiff made no investigation of labor conditions in the area and gave no consideration to the fact that this work was located in the desert and agricultural section of California from which the labor to be used in the performance of the contract would have to be drawn. This work was financed in part by certain counties in California and, of course, California relief labor had preference. In addition plaintiff seems not to have given consideration to the fact that there were other large work relief projects being carried on and planned in the vicinity of the work for which it was making a bid. Plaintiff knew of such projects and had bid upon the largest one. It received invitations to bid on others. Plaintiff says that when preparing its bid it assumed that defendant would furnish it promptly as needed “sufficient and competent workmen of average ability such as defendant had furnished plaintiff from the relief rolls on prior contracts, either skilled or unskilled, to carry on the contract work in an orderly manner, or in accordance with plaintiff’s progress schedule, in accordance with the plain intent and requirements of said contract.” Just what that assumed standard of average qualification and efficiency was is not very clear from the record, but it is clear from the record that the standard of qualification and efficiency was much higher than plaintiff had a right to expect under the circumstances and conditions. Plaintiff’s “prior contracts” appear to have been at or near industrial communities or in areas where the relief labor was likely to be more experienced in construction *160 work. The contract made no representations as to the relief labor other than that “at least ninety per centum (90%) of the persons employed on any project shall have been taken from the public relief rolls.” Defendant did not assume to warrant or guarantee on any standard the qualification, competency, or efficiency of the relief labor to be referred on plaintiff’s requisitions for assignment by plaintiff to such work. Under the contract the plaintiff was the sole judge as to whether it would reject, employ, or discharge any workmen referred by the United States Employment Service. Western Construction Company v. United, States, 94 C. Cls. 175; Nolan Brothers v. United States, 98 C. Cls. 41, 81, 82. The contract provided for the way in which relief or non-relief labor was to be secured in the event sufficient local relief labor could not be supplied. Plaintiff got along with the labor supplied by the local employment office and made no application concerning labor to the contracting officer as required under paragraph (b) of Article 19 of the contract and paragraph 14 of the specifications and regulations of the Works Progress Administration.
The evidence shows that the average quality and efficiency of the labor referred by the local National Reemployment Service were not below but, on the whole, was above that which plaintiff had a right reasonably to expect under the conditions and circumstances which prevailed when it made its bid. In Seeds & Derham v. United States, 92 C. Cls. 97, 116, the court in denying recovery on the ground of alleged unqualified labor referred by the United States Employment Service, said:
No doubt the labor was not the best that could have been obtained. It was obtained from the relief rolls, and while there were some excellent men on the relief rolls during the period in question, it is common knowledge that the majority of them were not of the most efficient type.
The holding in the Seeds & Derhmn case is applicable here.
, As to plaintiff’s allegation that defendant failed to promptly furnish labor as needed, the evidence shows that there was no unreasonable delay in referring labor as *161 promptly as was possible under the circumstances. Defendant acted diligently and did all it could to refer all labor requisitioned by plaintiff. Any delay that occurred in receiving labor at the time plaintiff desired to use it was due either to failure of plaintiff properly to anticipate its needs in time for the labor to be referred and to report, or to failure of the workmen referred to report promptly. Defendant was only bound to act with reasonable promptness in referring workmen when requested and was not bound by any stipulation to have such workmen report for work within any stated period of time.
The proof fails to establish that defendant breached any provision of the contract and plaintiff is, therefore, not entitled to recover as damages any part of the cost of performing the reinforcing steel and concrete work in excess of the amount due therefor under the contract computed at the agreed unit prices.
Plaintiff’s claim for excess cost of $899,077.38 under guantum meruit is computed by it as follows:
Cost of concrete work-$601,745. 75
Cost of reinforcing steel work_ 84,129.40 $685, 875.15
Total of cost items included in above, now abandoned_ 34, 858. 25
Total claimed cost_ 651,016. 90
Anticipated profit claimed_ 36,940. 78
Total claimed cost plus profit_ 687,957.68
Paid at contract unit price for concrete work $235, 574. 89 Paid at contract unit price for reinforcing steel work_ 53,305. 46 288, 880.35
Difference- 399,077.33
This alternative claim of plaintiff is based upon the contention that at the time plaintiff made its bid and at the time it was accepted and the contract executed, defendant concealed from plaintiff certain material facts known to defendant but unknown to plaintiff which, it is contended, resulted in plaintiff making a gross error of about 50 percent in its bid of unit prices for the concrete and reinforcing steel items of work. The “material facts” which it is insisted the defendant wrongfully and unlawfully concealed were first, the fact that the Chief Engineer of the Bureau of Reclamation *162 prepared an estimate, amounting to a total of $821,432.50, of the probable cost, including profit, based on the estimated quantities for performing the entire work specified, and second the fact that “the defendant intended to furnish to plaintiff labor that would be of less than average efficiency.”
This claim cannot be sustained on the record in this case. Judgment on the basis of quantum meruit cannot be allowed where there is a valid contract between the parties. Where the Government in the invitation for bids or in specifications makes a misrepresentation of material fact or in making representations to bidders conceals material facts and information known to it but not available to or known to the bidder, damages by way of excess costs resulting therefrom in the performance of the contract may, under implied terms of the contract, be recovered in a suit on the contract.
In the case at bar there was no misrepresentation by defendant and there was no concealment by defendant of any fact which it was under a legal duty to disclose to bidders or of any fact known to it and unknown and unavailable to bidders, and the proof does not show fraud, duress, accident, or such mistake as would justify the application of equitable principles under the equitable jurisdiction conferred upon this Court by section 145 of the Judicial Code (sec. 250, U. S. Code, Title 28). See Harvey v. United States, 8 C. Cls. 501, 512, 513; South Boston Iron Works v. United States, 34 C. Cls. 114, 197-202; Harvey v. United States, 105 U. S. 671; United States v. Jones, et al., 131 U. S. 1, 14-19; United States v. Milliken Imprinting Co., 202 U. S. 168, 173, 174; Wm. Cramp & Sons Ship cmd Engine Building Co. v. United States, 239 U. S. 221, 227-233; Ackerlind v. United States, 240 U. S. 531, 533, 534; Hartsville Oil Mill Co. v. United States, 271 U. S. 40, 49; Hazelhurst Oil Mill & Fertiliser Co. v. United States, 70 C. Cls. 334, 346-357; Edmund J. Rappoli Company, Inc. v. United States, 98 C. Cls. 499.
When advertising for competitive bids as required by law the Government usually makes an estimate for its own use of the probable cost of the project under consideration, but it is under no obligation to furnish such estimate to bidders. To do so would tend to destroy competition among *163 bidders which is required by the statute authorizing the making of contracts by the Government. The parties are dealing at arms length and bidders are presumed to be qualified to estimate the price at which they can perform the work specified at a reasonable profit. If they fail to do so, as plaintiff did in this case, the Government cannot for that reason be held for the resulting loss.
Plaintiff wanted this contract and made its bid of unit prices as low as it felt it could in order to obtain an award of the contract. In doing so, however, plaintiff failed to consider and investigate the labor situation which, in view of Article 19 of the contract, it should have done. The proof shows very clearly that no one representing defendant had knowledge of any particular facts concerning labor to be used in performance of the contract which were hot known or available to 'bidders, including plaintiff. See finding 5. Plaintiff is not entitled to recover on its alternative claim.
In addition to the reasons already given, plaintiff is precluded upon the facts in this case from recovering by reason of the provisions of paragraph 14 of the specifications (Finding 3) and by reason of the finality under Article 15 of the contract of the findings of fact made by the contracting officer and affirmed by the head of the department with respect to the questions involved herein, and which arose during prosecution of the work in performance of the contract. The contracting officer made findings of fact against plaintiff’s claim that the defendant failed to refer sufficient labor with reasonable promptness and that the skilled and unskilled labor referred was so unqualified and inefficient as to constitute a breach of Article 19 of the contract. These findings are not shown to have been arbitrary or grossly erroneous.
Plaintiff is not entitled to recover and the petition must, therefore, be dismissed.
It is so ordered.
Madden, Judge; Whitaker, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.

49 Stat. 115.