LittletoN, Judge,
delivered the opinion of the court:
Plaintiff seeks to recover $29,256.22 under nine separate items of a claim made under a contract with defendant entered into July 15, 1933, to furnish all labor and materials and perform all work required for the construction of a Booster Pumping Plant to serve as a dam across the Dale-carlia Eeservoir serving the District of Columbia. The several items of the claim now urged, and with respect to *353 which findings of fact established by the greater weight of the evidence of record have been made, are as follows:
Claim 1. Repair cofferdam_$6,068. 72
Profit_ 606.87
Claim 2. Rental cofferdam for extra work_ 7, 600. 00
Profit_ 760.00
Claim 3. Extra pumping- 809. 00
Profit_ 80.90
Claim 4. Additional forms- 402. 80
Profit_ 40.28
Claim 5. Additional brickwork_ 440. 00
Profit_ 44. 00
Claim 6. Balance dredging costs on extra work_ 563. 03
Claim 7. Bulkheads or concrete forms_ 205.00
Profit_ 20. 50
Claim 8. Liquidated damages deducted_ 3, 925. 00
Claim 9. Field and office overhead___ 7,690.12
Total_$29, 256.22
The general facts having a bearing upon the claims in connection with the preparation and contents of the drawings and specifications, the making of the bid, the execution of the contract, and the construction and collapse of the cofferdam are set forth in findings 1 to 13, inclusive.
The facts as to Claim 1 are set forth in findings 15 to 29, inclusive.
On this claim plaintiff contends that it was misled as to subsurface conditions by defendant’s probe chart or drawing, and the contract drawings. Specifically, plaintiff insists that defendant made a positive misrepresentation as to the subsurface conditions on the basis of the facts and information in its possession by leading plaintiff to believe that the subsurface conditions at the “rock” elevations shown consisted of bedrock or solid rock over the entire area of the site of the work and over the area covered by the hand and jet probings made by defendant, whereas the subsurface conditions later found to exist consisted of large boulders. Plaintiff contends that this alleged misrepresentation was the cause of the collapse of the cofferdam and the resulting cost of reconstructing and repairing it, and that if the area underneath the silt and mud had consisted of solid rock the steel sheet cofferdam *354 piling would have notched into the rock, no water would have come ip. underneath the piling, and the dam would not have given way and collapsed as it did.
From the Commissioner’s report of the facts and a careful study of the evidence of record, these contentions, in our opinion, are not supported by the facts. First, we think there was no misrepresentation by defendant, and, secondly, we are convinced from a study of all the evidence that subsurface conditions were not the cause of the collapse of the cofferdam, but that it collapsed because it was not properly and adequately braced on the inside to withstand the water pressure from the outside.
As to the alleged misrepresentation on the probe drawing, defendant had no information other than that disclosed on this probe chart which fairly and accurately indicated the result of the probings theretofore made. Various elevations were shown at the points of probings over the area, and, in each instance, the chart showed whether the hand and jet probings, both made at the same points, encountered “mud” or “rock” and the elevation in each instance. Another section of the probe chart showed the water elevation; by an irregular line it indicated the approximate average elevation of mud and by another very irregular line indicated the approximate average elevation at which “rock” had been encountered by the probings. The chart also explained in a “note” that the various probings were indicated by a dot when encountering “rock” and by a circle when encountering “mud”. A hand probe is made by driving a small rod to point of resistance, and a jet probe is made by using a %-inch or a one-inch pipe and forcing the water through it under pressure and extending the pipe to the point of resistance. The chart showed that the jet probings went below the hand probings and that, in practically every instance, the jet probes encountered “rock.” Defendant’s probe chart indicated as fairly and accurately as possible the information which defendant had as a result of probings — nothing more and nothing less. It is generally understood by engineers, and plaintiff should have known, that a probe chart can be only approximate; it cannot show definite solid rock. It can only indicate what the probe rod or pipe strikes at the point of probe. If it *355 strikes rock, suck rock may be a boulder or it may be solid rock. The boulders may be numerous or so close together, as was the case here, as to cause rock to be encountered by the probings over a large area. In the area in question boulders up to six feet in diameter were found after the earth had been excavated, and it was necessary to excavate as much as 13 feet lower to find solid bedrock suitable for foundation footings. In the case of probings, there is always an element of doubt as to whether the probe has encountered solid rock or bedrock, or has encountered a boulder.
With reference to the cause of the collapse of the cofferdam near the northeast corner at wooden guide pile 7B, the proof shows that the sheet piling was not sufficiently nor adequately braced; that before the collapse certain sheet piling at that point was bending inwardly six inches near the lower portion thereof, due to insufficient bracing and excess excavation at that point; that the water pressure caused the existing bracing to give way near the top of the piling which moved the sheet piling upward, and that section of the cofferdam moved inward about 12 feet, causing the entire dam to be flooded. The proof shows that, at this point the toe of the steel piling held firm until the bracing and supports collapsed. At the point of collapse the bracing and struts supporting the upper section of the cofferdam steel piling and wales had been placed at an incline or acute angle to the outside water pressure, and guide pile 7B had been sheared for seven feet at its bottom end or cut in two by the driving of the steel piling. As a result this guide pile, to which the struts and bracings were attached, gave way and there was nothing left to hold the interior bracing and struts in place.
Plaintiff is not entitled to recover on this claim.
In Claim 2, findings 30 to 35, inclusive, plaintiff seeks to recover $7,600 as rental for its cofferdam at $50 a day for 152 days, the period of extra work under Extra Work Order No. 1, plus a profit of 10 percent, of $760.
No recovery can be had under this claim for several reasons. This matter was of necessity included in and covered by the extra work order which was based upon plaintiff’s proposal, and was accepted and signed by plaintiff without protest. *356 Cf. Enos L. Seeds and John Derham, Jr., Individually and Trading as Seeds & Derham v. United States, 92 C. Cls. 97. If plaintiff considered that it was being required to furnish plant or equipment not required by the contract in connection with extra work, it was required to protest arid appeal. This it did not do. The contract appears to have contemplated that the cofferdam would be at all times available without extra charge or rental for the entire work, including changes. Paragraph 8 of the specifications expressly provided for an allowance only “for the use of any plant or machinery actively employed on this extra work as may be determined by the contracting officer.” The contracting officer’s decision in the change order not to make any allowance for rental of cofferdam was not erroneous.
Plaintiff asserts that it is entitled to recover this rental and profit on quantum, meruit. Quantum meruit is based upon an implied agreement and there was certainly no such agreement here. Moreover, recovery on an implied contract cannot be had where there is an express contract concerning the subject matter between the parties, as there was here.
In Claim 3 plaintiff seeks to recover $809 and 10 percent profit of $80.90 for alleged extra pumping costs (finding 36). Plaintiff may not recover on this claim for the reasons stated under Claim 1. The necessity for the use of a second pump was not due to any act or fault of defendant. Plaintiff was responsible for the adequacy of the cofferdam and for keeping it dewatered.
In Claim 4 plaintiff seeks to recover $402.80 and 10 percent profit of $40.28 (findings 37 to 40, inclusive). It is insisted that this amount of $402.80 had to be expended by plaintiff for concrete forms by reason of its being required by the contracting officer to pour monoliths exceeding 40 feet in length, as set forth in the specifications. The claim that this excess cost was actually incurred on that account is not supported by the evidence. The fact that monoliths exceeding 40 feet were actually poured does not, of itself, entitle plaintiff to recover. It must prove that it was actually damaged in some determinable amount. Nominal damages cannot be recovered.
*357 In Claim 5 plaintiff seeks to recover $440 and 10 percent profit of $44 for extra cost paid to its subcontractor on account of additional labor due to the necessity of building around obstructions as a result of the installation by defendant of conduits, outlets, etc., before the brick work was done (findings 41 to 44, inclusive).
Although this claim appears to have some merit, it must be denied under the terms of the contract. The contracting officer denied it for the reasons given in his letter to plaintiff, and under the terms of the contract that action must be approved. There is no evidence, other than the subcontractor’s receipt of December 12, 1934, for $440, which plaintiff paid after the contracting officer had denied plaintiff’s claim for a 40 percent increase in cost, as to what a fair aind equitable allowance for such extra work as was performed would have been after taking credit for elimination of the work as called for by the specifications. The subcontractor’s bill was based on 240 hours, or 30 days of 8 hours, for a brick mason and 160 hours, or 20 days of 8 hours, for common laborers.
In Claim 6 plaintiff seeks to recover $563.03, the balance due for extra dredging work outside the cofferdam before the sheet piling was removed (findings 45 to 48, inclusive). On the facts plaintiff is entitled to recover this amount. Admittedly plaintiff was not required to do this work under the contract. The contracting officer gave plaintiff written instructions, which he received on August 9,1934, to do the work as an extra. He did not fix in this order the amount that would be paid, but the contract provided for cost plus 10%, and plaintiff did the work at cost, including a specified rental per hour for the crane and runway or trestle plus 10 percent agreed upon between plaintiff and the contracting officer’s authorized representative in charge of the work. A daily record was made by defendant’s engineer showing the exact amounts of costs, rentals and profit for each day and the total thereof. This daily record was signed by plaintiff and defendant’s engineer and was sent or reported each day to the contracting officer, who made no objection thereto at any time. Nor did he at any time, so far as the record shows, make any adverse decision with reference thereto. We must therefore hold that he ratified and approved what plaintiff *358 claimed for the extra work which, was approved, agreed to and reported each day by the engineer in charge. The Comptroller General was in error in deducting the $563.08. Extra Work Order No. 1 of November 28, 1933, had no connection with this extra work in August 1934 and cannot be used as a basis for payment. The trestle was also used, as defendant points out, for the purpose of pulling the sheet piling, but this does not prove that plaintiff was not entitled to a fair rental for its use on the extra work, and no evidence has been submitted to show that the rental claimed by plaintiff, which was agreed to by both parties and not objected to by the contracting officer, was not a fair and reasonable rental.
In Claim 1 plaintiff seeks to recover $205 plus a profit of 10 percent, or $20.50 (findings 49 and 50, inclusive), for the cost of bulkheads or concrete end forms which were necessary for the pouring of concrete footings in the extended excavations under Extra Work Order No. 1, below the elevations of the footings shown on the original drawings. These excavations were 13 feet deep and five feet wide, and the concrete therein was placed by plaintiff in 8 pours, as directed. The sides of the excavations had been shored for protection with shoring material paid for by the Government under the terms of the extra work order on a cost-plus basis. When the time arrived for pouring the concrete footings plaintiff was permitted to use the shoring for side concrete forms but it was necessary for plaintiff to provide and install seven end forms or bulkheads, as they are called in the record, 13 feet deep and five feet wide. For these forms and the placing thereof plaintiff expended $41 for lumber and $164 for labor. There is no evidence that plaintiff made any protest or claim to the contracting officer at the time or within ten days, as required by par. 20 of the specifications, that it was not required by the contract and the extra work order to do this alleged extra work. This concrete work was completed by May 2, 1934, and plaintiff first made claim on account thereof November 1, 1934, after all contract work had been completed on October 24,1934. On the evidence the claim must be disallowed on the merits. From the evidence and a reading of the bid, art. 1 of the contract, and paragraph 4-16 of the specifications, it seems obvious that the term “concrete in place” meant *359 the necessary extra concrete work complete for the uses and purposes intended by the contract. By the contract plaintiff agreed not only to furnish all concrete but to perform all work necessary to its completed state on the concrete portion of the structure, and, of course, this included not only the pouring of concrete but the erection of such extra concrete sections or footings as might be found necessary. No obligation rested upon the Government to furnish any material for the contract work or for extra work, except as specifically provided in the contract or in an extra work order, and there was no such provision made for the furnishing of concrete forms. The bid form called for unit price bids for “extra work” of the character described therein among which was “extra concrete in place”. Small quantities were listed in the tabulation on the bid form, but it was expressly stated that •these quantities were only for the purpose of “canvassing bids,” and attention was expressly called to the pertinent paragraphs of the specifications which placed no limit upon quantities. In the bid plaintiff expressly agreed to execute the standard form of contract, and this form required plaintiff to perform all such extra work as might be found necessary. As executed this contract provided that “Extra work sba.11 be performed on the following basis: * * * for extra concrete in place, Nine Dollars ($9.00) per cubic yard.” We think that all these provisions fairly and reasonably interpreted conveyed the meaning that the extra concrete work referred to was to be completed contract work, not merely the furnishing and pouring of concrete as plaintiff contends.
Plaintiff appears to have based its bid of $9.00 for extra concrete in place on the assumption that it would only be required to do a very small amount of extra concrete work, and that such extra concrete would be poured in channeled rock and no forms would be necessary; however, this assumption was not justified, and it cannot now hold the Government responsible for this mistake.
Claim 8 is for recovery of liquidated damages in the amount of $3,925 deducted and withheld by the Comptroller General on final settlement (see findings 51 and 52). On these findings the liquidated damages chargeable to plaintiff *360 amounted to $3,625 for 145 days’ delay rather than $3,925 for 157 days’ delay. Plaintiff is therefore entitled to recover $300 on this claim.
Claim 9 is for damages in the amount of $7,690.12 for overhead expense resulting from 172 days’ delay in completion, which plaintiff contends was caused by the fault of the defendant (see findings 53 to 56, inclusive). Under these findings plaintiff is entitled to recover $616.
Judgment will be entered in favor of plaintiff for $1,476.03. It is so ordered.
Madden, Judge; Whitaker, Judge; and Whalet, Chief Justice, concur.
JoNES, Judge, took no part in the decision of this case.