231 F.2d 353
 UNITED STATES of America, for the use of WESTINGHOUSE
ELECTRIC SUPPLY COMPANY, a corporation, and all
similarly situated, Appellant,
v.
John V. AHEARN, Sr., an individual doing business under the
firm name and style of Ahearn Electric Company,
and The Aetna Casualty and Surety
Company, a corporation, Appellees.
 No. 14537.
 United States Court of Appeals Ninth Circuit.
 Oct. 26, 1955.
Rehearing Denied Dec. 21, 1955.
 
 Evans, McLaren, Lane, Powell & Beeks, Martin P. Detels, Jr., W. Byron Lane, Seattle, Wash., for appellant.
 Hoof, Shucklin & Harris, Seattle, Wash., Merrill Wallace, Bremerton, Wash., for appellees.
 Before STEPHENS, FEE and CHAMBERS, Circuit Judges.
 JAMES ALGER FEE, Circuit Judge.
 
 
 1
 This is a claim by Westinghouse Electric Supply Company to recover on the contractor bond in the appropriate statutory action[1] for the balance of the price of latex-covered telephone cable installed in a government work project.
 
 
 2
 The Navy called for bids for major repairs to the electrical distribution quarters area, Puget Sound Navy Shipyard at Bremerton, to be completed in August, 1952. The invitation and specifications permitted a bid for either paper-wrapped or latex-covered telephone cable. Ahearn, in preparation of a bid, obtained from Westinghouse a quotation which, among other items, included paper-wrapped cable to be ordered direct from Graybar Electric Company, Seattle, with Delivery date third quarter 1953. The contract was awarded Ahearn. After notification of the award, a salesman for Westinghouse, on February 5, 1952, took an order signed by Ahearn direct to Westinghouse for paper-wrapped cable, without specification of delivery date.
 
 
 3
 In March, the same salesman wrote out a new order for latex insulated cable, which, although not signed by Ahearn, was forwarded to the company by the salesman. In the early part of January, 1953, there was delivered on the job by Westinghouse sufficient latex-covered telephone cable to complete the work.
 
 
 4
 Ahearn asked the Navy for instructions and for a better price if latex-covered cable were installed. The Navy responded that the specifications had been amended in this respect, and directed that this wire be laid down or that Ahearn be subject to penalty of $40.00 per day for delay. No increase of price was suggested. Thus impelled, Ahearn installed the latex-covered cable. He paid to Westinghouse the price of the paper-covered cable in accordance with his order of February 5, 1952. This suit is to recover $5,469.51, found to be the difference between '$7500 for latex-covered and some $1800 which Ahearn expected to pay for paper-covered' cable.
 
 
 5
 The trial court found on conflicting evidence that there was an express contract between the parties that Westinghouse should furnish paper-covered cable before the end of the month of August, 1952, at about $1,800.00.
 
 
 6
 The document which the court found was controlling was the order written by the Westinghouse salesman and signed by Ahearn, specifying approximate quantity and the agreed price for the paper-covered cable requisite. This instrument must be interpreted in the light of surrounding circumstances. After the Navy had issued its invitation, Ahearn applied to Westinghouse for prices of suitable material under the specification to be used in his own bid. No price was submitted by Westinghouse for latex-covered cable, but a price of approximately $1,800.00 was given for the paper-covered, subject to a direction that this item be ordered direct from the Graybar Company of Seattle, and a delivery date in the third quarter of 1953. Ahearn testified that, before submitting the bid, a salesman of Westinghouse assured him that paper-wrapped cable could be furnished in connection with the work in ample time to complete the Navy contract on schedule, if the entire requirements of materials were ordered of Westinghouse. This was denied by the salesman. On the basis of the prices so furnished, Ahearn was awarded the contract by the government with a completion date in August, 1952, and an express designation of paper-covered cable. Thereafter, in accordance with the previous dealings, Westinghouse accepted the order direct, including the paper-wrapped cable at the price of approximately $1,800.00, but eliminating the time limitation and the necessity of ordering from Graybar. The provisions of the main contract as to time were thus accepted.
 
 
 7
 There was a considerable amount of testimony to the effect that Ahearn agreed about March 10 to order latex-covered cable. Significantly, the salesman did not ask Ahearn to sign this order form. The trial court found that Westinghouse had not proved its case on this feature, and that there was no contract by Ahearn to purchase latex-covered wire, and denied recovery. All these findings were based upon highly conflicting testimony. Each has substantial evidence to support it, and it is thus our duty to accept each. This determination involves the credibility of witnesses, the effect of written documents, and innumerable other factors which enter the finality. Certainly, the findings are not clearly erroneous.
 
 
 8
 When the latex-covered cable was shipped, there was performance of the terms of the express contract. Delivery was late and even after acceptance Ahearn might have sued Westinghouse for breach in this regard if he had had any damage. But the government had not invoked the daily penalty. The trial court found there was only one contract in existence. Westinghouse knew latex-covered wire would be acceptable to the government. It was aware the daily penalty would be invoked against Ahearn if an acceptable article were not installed immediately. Since it accepted responsibility for choosing the materials and prices upon which Ahearn based his bid, it cannot complain that Ahearn used the material tendered on the assumption that Westinghouse was bound to deliver acceptable material at the agreed price. If the delivery of latex-covered cable for immediate use instead of paper-wrapped might be itself construed as a breach of contract, Westinghouse cannot take advantage of its own breach.
 
 
 9
 The theory seems to be that it was impossible to obtain paper-wrapped cable. But Westinghouse had contracted at all events to deliver such material in August, 1952. The impossibility of obtaining the specified article could not relieve it of the obligation.
 
 
 10
 Appellant counters that there was an agreement (1) implied in fact, or (2) implied in law, or, failing these, (3) the statute provided that parties to the bond of the contractor should be liable for each item of value voluntarily incorporated therein. There is a vociferous complaint that Ahearn used the cable knowing the price. The trial court expressly found that Ahearn did not receive any benefit from the substitution of the latex-covered cable. Accepting the finding that the only contract was that based upon the order signed by Ahearn, the delivery of the cable was performance thereunder. The Statute of Frauds had no effect upon the transaction. If the cable had been diamond studded when tendered in performance of the accepted order, Ahearn could have kept it and incorporated it in the work and he would not have been liable for the fantastic excess in value. There would have been no unjust enrichment.
 
 
 11
 The terms of the express contract control. There cannot be an implied contract either in law or in fact contrary in terms to a controlling express contract. If Westinghouse had furnished the paper-wrapped cable and proved that it cost $7500.00 or that the expense of obtaining the cable at the time was a similar figure, still it would be bound to deliver at the agreed figure of $1800.00. The fact that latex-covered cable was substituted made no difference.
 
 
 12
 In the parallel situation, the Navy received the benefit of the more costly material and might be conceived to be unjustly enriched thereby. But the contract between Ahearn and the Navy was controlling even if he installed material which he had not contracted to deliver.
 
 
 13
 Affirmed.
 
 
 
 [1]
 40 U.S.C.A. § 270b, 49 Stat. 793