**NATIONAL TRAILER CONVOY, INC.**

v.

**The UNITED STATES.**

No. 51–64.

United States Court of Claims.

May 14, 1965.

Harold G. Hernly, Washington, D. C., for plaintiff. Wrape & Hernly, Washington, D. C., of counsel.

John Charles Ranney, Washington, D. C., with whom was Asst. Atty. Gen., John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM.

This case was referred pursuant to Rule 54(b) to Trial Commissioner Saul Richard Gamer with directions to make his recommendation for conclusions of law on plaintiff's motion and defendant's cross-motion for summary judgment. The commissioner has done so in an opinion filed February 24, 1965. Neither party has filed a request for review by the court pursuant to Rule 54(b) and the time for so doing has expired. Since the court is in agreement with the opinion and recommendation of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is therefore not entitled to recover. Defendant's cross-motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and plaintiff's petition is dismissed.

## OPINION OF COMMISSIONER

Plaintiff, a motor common carrier, sues to recover $127.36 as transportation charges for services allegedly rendered under a Government bill of lading.

Under such a bill, tendered by the Transportation Officer at the Memphis Army Depot, Memphis, Tennessee, plaintiff undertook the transportation from Tupelo, Mississippi, to Fort Rucker, Alabama, of a house trailer owned by an Army Officer. The bill recited the aforesaid amount as constituting the appropriate charges for the services involved.

During transit and while in Tuscaloosa, Alabama, plaintiff's tractor transporting the trailer became involved in an accident, resulting in the total loss of the trailer. Thereafter, plaintiff entered into an apparently satisfactory cash settlement ($1,800) with the Army Officer who thereupon released plaintiff from all further liability.

Subsequently, plaintiff billed the Army for $127.36, the amount set forth in the bill of lading. Upon its refusal to make payment, plaintiff presented its claim to the General Accounting Office which also disallowed it, stating: "Carrier's entitlement to charges is conditioned on delivery of goods at destination as required by condition No. 1 on Government bill of lading." This "Condition" calls for payment being made "On presentation of this bill of lading, properly accomplished * * *."

Plaintiff seems to argue that the total measure of its liability for loss or damage to cargo is governed by section 20(11) of the Interstate Commerce Act (49 U.S.C. § 20(11) 1958 ed.),[1] which provides that common carriers shall be liable "for the full actual loss, damage, or injury" they cause to property carried, notwithstanding any limitations of liability set forth in any bill of lading, contract, rule, or tariff. The Supreme Court, says plaintiff, has, in Chicago, Milwaukee & St. Paul Railway Co. v. McCaull-Dinsmore Co., 253 U.S. 97, 40 S.Ct. 504, 64 L.Ed. 801 (1920), construed this section as requiring value calculations of damaged or lost cargo to be based on market value at destination,[2] thereby putting the shipper (or owner) in the same position he would have been in "if the contract had been performed" (p. 100, 40 S.Ct. p. 505). Since, plaintiff argues, its cash settlement with the owner thus must be deemed to represent the full value of the trailer at destination, plaintiff in effect should be considered as having delivered the cargo to him, there being no real distinction between such cargo and its full monetary value. Therefore, says plaintiff, it should be paid the charges for transportation services from point of origin to point of final destination on the same basis as if plaintiff had made actual delivery of the trailer itself at destination.

Since section 20(11) fixes the full measure of plaintiff's liability, says plaintiff, defendant errs in relying on any bill of lading terms which might be construed as making actual delivery a prerequisite to the collection of transportation charges. But, plaintiff argues, even if the bill is controlling as delineating the parties' contract rights, when the Army Officer accepted the trailer or its equivalent, the bill of lading did become "properly accomplished" in fulfillment of Condition No. 1. Plaintiff further contends that in any event it should at least be entitled to some quantum meruit recovery (presumably based on the transportation services which were actually performed from point of origin to the place of the accident).

These contentions of plaintiff cannot be accepted. Ever since Alcoa

---

1. 49 U.S.C. § 319 makes section 20(11) applicable to common carriers by motor vehicle.

2. "* * * the actual loss * * * is the loss of what the contractee would have had if the contract had been performed * * *." (p. 100, 40 S.Ct. p.

504.) The Court therefore affirmed a judgment measuring the value of lost grain at its higher value "at the place of destination at the time when it should have been delivered" (p. 98, 40 S.Ct. p. 504) instead of at its lower value "at the place and time of shipment" (id.), as provided in the bill of lading.

S.S. Co. v. United States, 338 U.S. 421, 70 S.Ct. 190, 94 L.Ed. 225 (1949), it has been settled that a common carrier's liability for the value of cargo lost prior to delivery is distinct from the shipper's liability for freight charges, and that the latter is controlled by the contractual provisions set forth in the bill of lading. The parties can, if they so desire, provide in their bill of lading contract that the full carriage charges will be due despite loss of the cargo in transit. However, regardless of what the general rule may be in any particular State or under some other form of contract, the Supreme Court made plain in Alcoa (which was also a suit under the Tucker Act), that under a proper interpretation of the standard form of Government bill of lading therein involved, and which is identical in all pertinent material respects with the bill of lading employed in the instant case, " * * * the United States is not liable for freight on * * lost public property" (p. 425, 70 S.Ct. p. 192). Condition No. 1, said the Court, "expressly conditions payment upon" the submission of a bill of lading "properly accomplished," [3] and, under "Instruction 2" (the conditions and instructions being printed on the reverse side of the bill under a heading "General Conditions and Instructions"), the bill becomes "properly accomplished" only when:

"The consignee *on receipt of the shipment* will sign the consignee's certificate on the original bill of lading and surrender the bill of lading to the last carrier. The bill of lading *then* becomes *the* evidence upon which settlement for the service will be made." (p. 426, 70 S.Ct. p. 193; emphasis supplied by the Court.) [4]

And further, said the Court, the consignee's "Certificate of *Delivery*", printed on the face of the bill, expressly states "I have this day *received*" the property described in the bill ("in apparent good order and condition, except as noted on the reverse hereof") and "Condition 6" recites that "*Receipt* of the shipment is made subject to the 'Report of Loss, Damage, or Shrinkage' noted hereon." (pp. 426–427, 70 S.Ct. p. 193; all emphasis supplied by the Court.) [5] And after also noting that " 'Instruction 6' calls for notation of all loss or damage before accomplishment if possible," [6] the Court held:

"In sum, 'the' evidence upon which the carrier may rely for payment is the 'accomplished,' or surrendered, bill of lading, accompanied by the 'Certificate of Delivery' signed 'on receipt of the shipment,' with the 'receipt' subject to the loss or damage report." (p. 427, 70 S.Ct. p. 193)

and that:

"Without receipt of the goods, the bill was not, and could not have been, filled in under the strict terms of the standard form which we have stressed, so as to be 'properly accomplished' for purposes of payment to the carrier." (p. 427, 70 S.Ct. p. 193.) [7]

---

3. The Condition in the instant bill of lading reads in full as follows:
   "1. Prepayment of charges shall in no case be demanded by carrier, nor shall collection be made from consignee. On presentation of this bill of lading, properly accomplished and attached to freight voucher prepared on the authorized Government form, to the office indicated on the face hereof, payment will be made to the last carrier, unless otherwise specifically stipulated."

4. Except for the insertion of the word "original" before "bill of lading" in the second sentence, this wording is identical with the Instruction 2 contained in the bill of lading herein involved.

5. All quoted portions of the Certificate and Condition 6 are identical with the provisions of the instant bill.

6. As does the Instruction 6 herein involved.

7. The Court further went on to point out that its conclusion was buttressed by the terms of the authorized Government form of voucher which Condition 1 requires the carrier to use in presenting its claim for the freight charges, which

■ ■ Nor, as the court pointed out in Strickland Transportation Co. v. United States, 223 F.2d 466 (5th Cir. 1955), is such a lost shipment case one "permitting recovery on a quantum meruit" (p. 467), the court holding: "The suit [under the Tucker Act] is on the contract contained in the Bill of Lading and there can be no recovery contrary to its terms." (id.) This court too has consistently held that there can be no recovery on the theory of quantum meruit where there is a valid express contract between the parties. Electric Power Plants Corp. v. United States, 173 F.Supp. 615, 146 Ct.Cl. 98, 100 (1959); Lacchi Construction Co. v. United States, 102 Ct.Cl. 324, 356 (1944); Frazier-Davis Construction Co. v. United States, 100 Ct.Cl. 120, 162 (1943). In Strickland, too, the shipment, ammunition destroyed en route by an explosion, was moving under a bill identical with that herein involved. In denying any recovery for transportation charges, the court rejected the carrier's identical contention that, "having paid

the full destination value, the Government has had the equivalent in value of the transportation service and for this equivalent should make payment" and, on the basis of Alcoa, flatly held:

> "The Bill of Lading cannot be 'properly accomplished' until there has been a receipt of the shipment by the consignee at destination. Delivery of the shipment is a condition precedent to liability for freight." (223 F.2d p. 468.)

Plaintiff points to no case involving a bill of lading similar to the one employed herein which allows any recovery for transportation charges for cargo lost or destroyed en route. Nor is any plausible reason presented why the holdings in Alcoa and Strickland should not be applicable and dispositive.[8]

Accordingly, plaintiff's motion for summary judgment should be denied, defendant's cross-motion granted, and plaintiff's petition dismissed.

---

form also spoke in terms of payment for transportation charges being made "only for the quantity of stores delivered at destination." (p. 428, 70 S.Ct. p. 194.) Neither party has here submitted to the court as part of its motion papers the payment voucher which plaintiff presented and was required to use.

8. Plaintiff's further contention that the provisions of Rule 70 of the governing tariff herein (Mobile Housing Carriers Conference, Inc., Agent, MF–I.C.C. No. 10, being plaintiff's Exhibit A) supports its position, and that the bill of lading provisions must therefore give way to those of the applicable tariff, is not understood. Rule 70, headed "Claims for Loss, Damage or Overcharge" is obvious-

ly concerned only with claims by shippers against the carrier. It plainly has nothing whatever to do with claims by carriers for transportation charges. The Rule reads as follows:

"All claims for loss, damage or overcharge shall be submitted in writing accompanied by the receipted bill for transportation charges and all other lawful charges accruing, and the original bill of lading, if not previously surrendered to the carrier, and in support of claims for loss or damage, invoices representing replacement cost of lost articles and/or repair costs of damaged articles, carrier may require certified or sworn statement of claim. [*sic*]"