**CITY OF CHATTANOOGA, TENNESSEE, Felix Miller, Jr., Donald W. Hayden, E. R. Pickett, and Fred Rothberger, Jr., Plaintiffs-Appellants,**

v.

**LOUISVILLE & NASHVILLE RAILROAD CO., Defendant-Appellee.**

**No. 19721.**

United States Court of Appeals, Sixth Circuit.

May 21, 1970.

Richard P. Jahn, Chattanooga, Tenn., for appellants; Eugene Collins, City Atty., Chattanooga, Will Allen Wilkerson, Chattanooga, Tenn., on brief.

Thomas S. Kale, Chattanooga, Tenn., for appellee; Spears, Moore, Rebman & Williams, Chattanooga, Tenn., on brief.

Before WEICK and COMBS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

The issue at trial of this case was whether appellant, City of Chattanooga, Tennessee, has the right to insist that a romantic relic of the Civil War—the famous steam locomotive, the General—permanently remain on display in that city. Its present and apparent owner, appellee, Louisville & Nashville Railroad Company, proposes to deliver it to the town of Kenesaw, Georgia, there to continue to commemorate what one Civil War historian described as "probably the most dashing, most gallant, desperate and thrilling incident of the Civil War." District Judge Frank W. Wilson gave judgment for the L & N, dismissing Chattanooga's complaint.

We affirm.

The General had been on display at the Union Station in Chattanooga, Tennessee, from about 1901 until it was taken, shortly before this litigation, into the State of Kentucky. On September 11, 1967, the locomotive was being transported through Chattanooga, Tennessee, on its way to Kenesaw, Georgia. Thereupon, and with some of the daring that characterized its memorable journey in 1862, a group of intrepid yeomen of Chattanooga captured the General by service of a writ of attachment—"executed by causing the main north-south freight line of the railroad to be blocked with automobiles placed across the tracks, thereby stopping the train." State of Georgia v. City of Chattanooga, Tennessee, 406 F.2d 830, 832 (6th Cir. 1969). The procedural jousting which characterized the beginnings of this litigation, and in which we had a part with our above opinion,[1] having subsided, the case was submitted to the District Court for decision on the merits.

Our affirmance of Judge Wilson's judgment may be the last chapter in the history of the General. The issue was, and is, ripe for final decision. We doubt, however, that Chattanooga, its involved citizens and their counsel, will stop at this level. We applaud and admire the zeal, the creativeness and the tirelessness with which they have continued to press on with their claims. Surely they will go the last mile and knock at the portals of the Supreme Court. Innovators have not always been turned away merely because they come without precedential support.

From its arrival in Chattanooga in 1901, the L & N Railroad and its predecessors have had possession of the General. There was evidence from which it could be found that the railroad's ownership of the locomotive had come to it from its original owners through a valid chain of title. The representatives of Chattanooga, however, insist that without reference to technicalities and niceties of title, the General should remain in perpetuity on display as an historical monument within the geographical limits of Chattanooga.[2] They advance theories of charitable trust, dedication, estoppel, prescriptive right, implied contract and others to support their claim to relief. District Judge Frank W. Wilson's opinion in this case is reported as City of Chattanooga v. Louisville & Nashville Railroad Co., 298 F.Supp. 1 (D.C.E.D.Tenn.1970). Aside from our general agreement with the opinion, we very much like its prefatory remarks, and we quote this much of them:

"In this lawsuit the pursuit of the 'General' continues. While the capture of the now ancient and historic steam locomotive known as the 'Gen-

---

1. We held that the attachment was an unwarranted intrusion and burden upon interstate commerce.

2. The General would be little seen if returned to its wonted stall in the Union Station at Chattanooga. That one time exciting part of America's then teeming railway system stands empty now—a sad reminder of the days when a proud Dixie Flyer and other great trains made stops there. Only the birds that twitter in the upper, and now rusted, supports of the silent train shed would see it.

eral' remains the object of the pursuers in this lawsuit, unlike on that fateful day of April 12, 1862, life and death does not hang in the balance. Rather here the pursuers and the pursued vie with each other as to the more appropriate manner to preserve and do honor to the memory of the men and the traditions which are bound up in the story of the 'General.'

"In an age when scarcely a tradition heretofore honored by men is not under attack and when there seems to be scarcely any institution whose legitimacy is not suddenly subject to peremptory challenge, it is well that there should be those whose concern is to preserve the traditions that have stood the test of time and to defend the institutions that have made this a united nation of free men." 298 F. Supp. at 2.

The opinion sets out a history of the exciting events which brought fame to the General. It correctly discusses relevant law. Judge Wilson denied plaintiffs' motion for new trial made upon the ground of newly discovered evidence. We are of the view that he acted discreetly in denying it.

The judgment of the District Court is affirmed.