**RICHARD GOETTLE, INC., Plaintiff,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant.**

**No. EC82–387–LS–P.**

United States District Court, N.D. Mississippi, E.D.

Feb. 28, 1984.

James A. Clark, Schiff, Hardin & Waite, Chicago, Ill., Thomas D. Murry, Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, Miss., for plaintiff.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Associate Gen. Counsel, Thomas C. Doolan, Donna L. Pierce, Tennessee Valley Authority, Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

SENTER, Chief Judge.

This cause comes on for hearing on cross motions for partial summary judgment.

Having read the memoranda submitted by the parties, together with the exhibits, and being otherwise fully advised in the premises, the court is now in a position to address the issues raised by these motions.

This action was filed by Richard Goettle, Inc. (hereinafter Goettle) against the Tennessee Valley Authority (hereinafter TVA) under Section 10(a)(2) of the Contract Disputes Act of 1978, 41 U.S.C. § 609(a)(2). Counts I, II, and III of the complaint seek additional compensation for excavation work performed under a written construction contract between Goettle and TVA.

The undisputed facts, as shown by the pleadings and the contract, establish the following:

On September 25, 1979, TVA issued an invitation for bids (IFB), including a complete bidding package, for the construction of reinforced concrete drilled pier foundations for the cooling towers at TVA's Yellow Creek nuclear plant project near Iuka, Mississippi. The bidding package consisted of an invitation, bid, and acceptance. All documents as returned by the successful bidder together constituted the contract between the bidder and TVA.

At the time the invitation was issued, TVA had not determined the specific size of the piers which would be used for the cooling tower foundation. As a result, TVA required bidders to submit "unit prices" for various diameters of excavation in three different subsurface materials [1] for each of the three possible sizes of piers that could be used for the cooling tower foundation. Goettle submitted unit prices for soil and chert excavation in 66, 72, and 78 inch diameters. It submitted unit prices for rock excavation in diameters of 60, 66, and 72 inches. The unit prices submitted for each category were to be "a total excavated price per linear foot of pier foundation." [2]

It was TVA's prerogative under the contract to select the size of the piers which

1. These subsurface materials were soil, chert, and rock.

2. Contract, Pier Foundations Itemization Sheet.

would support the outside perimeter of the cooling towers. The contract required the contractor to "[p]rovide for the construction of veil support pier foundations" and "to furnish all labor, tools, equipment, forms, and materials ... for the construction of pier foundations to support the cooling tower veil on sound bearing rock."

Specification 4218 of the contract contained detailed information about the pier foundations which Goettle was to construct. Paragraph 7.3 of the specifications stated that the pier shaft dimensions could not be less than those shown on the TVA drawings. It also stated that the maximum shaft diameter could not exceed the specified shaft diameter by more than five percent except where temporary casing was installed. Paragraph 7.3 also provided that if such casing was installed, the shaft diameter could be six inches larger than the diameter specified in the drawings.

The contract imposed upon the contractor the responsibility for keeping ground water from entering the shafts in order to permit placement of the concrete piers. Paragraph 7.1.2 of the specifications stated that, where necessary, "[t]he shaft walls ... shall be protected against caving in or sloughing, and ground water shall be prevented from entering the shaft through the walls by installing temporary steel casing." Additionally, paragraph 7.4.2 of the specifications provided that temporary steel casing could be used to seal off ground water, but that these casings were not to extend into the rock socket except under special circumstances when the seal at the top of the rock proved to be ineffective.

The contract identified by TVA as No. 80K54826533 was awarded to Goettle as the low bidder on February 1, 1980. On February 20, 1980, TVA sent a letter to Goettle which transmitted a revised drawing showing that TVA had selected the pier size, specified in the first column on the Pier Foundations Itemization Sheet, having a diameter of 66 inches through soil and chert and 60 inches through rock.

The subsurface reports that were contained in TVA's Invitation for Bids on the veil pier foundations suggested no more than two to four feet of weathered rock. Paragraph 4.3.1 of the specifications expressly stated that the subsurface information provided by TVA "is not guaranteed by TVA to represent all conditions that will be encountered in constructing drilled pier foundations at the site." During construction, it became apparent that TVA's subsurface reports were not accurate in that large quantities of weathered rock were encountered. TVA rejected the weathered rock as unacceptable to serve as the rock socket for the foundations. Accordingly, Goettle excavated through the weathered rock until solid rock suitable for the 60 inch rock socket was reached. Goettle then inserted casing through the weathered rock to (1) prevent ground water from entering the shaft, (2) to prevent caving in or sloughing, and (3) to provide a safe environment for inspection of the rock socket. Since the rock socket was to be 60 inches in diameter without casing, it was necessary to use a larger diameter casing above the socket. Thus, Goettle excavated a 66 inch cased shaft through the weathered rock to enable it to place the 60 inch diameter socket into the solid rock.

Goettle was paid by TVA for all excavation at the unit price submitted for 60 inch diameter piers. Goettle contends, however, that it should have been compensated at the unit price submitted for rock excavation for a pier having an actual diameter of 66 inches.

I. *Count I—Plaintiff's Claim Under the Contract.*

In Count I of the complaint, Goettle claims that the contract provides for the payment of the unit price for rock excavation for a diameter of 66 inches and specifies that the contractor will be paid at the quoted unit price for its actual excavation. When weathered rock was encountered, TVA required that it be excavated and TVA's specifications necessitated that the excavation be 66 inches in diameter. Thus, according to Goettle, it must be paid the contractual price for its actual excavation at the unit price for rock excavation for a

diameter of 66 inches as provided in the contract. Alternatively, Goettle asserts that the unanticipated rock presented a differing site condition for which Goettle is entitled to an "equitable adjustment in the price." The most equitable price, according to Goettle, is that specified in the contract for the 66 inch diameter excavation.

TVA asserts that it selected the 60 inch diameter excavation and that this alternative comprehended an additional six inch diameter excavation if such excavation was needed for dewatering and for the use of temporary casing. Inasmuch as the contract required Goettle to construct a pier with a 60 inch diameter in rock, the unit price specified in the contract for excavation for that size pier is controlling. The court finds TVA's argument persuasive.

■ It is well established that "[w]here one agrees to do, for a fixed sum, a thing possible to be performed, he will not ... become entitled to additional compensation, because unforeseen difficulties are encountered." *United States v. Spearin*, 248 U.S. 132, 136, 39 S.Ct. 59, 61, 63 L.Ed.2d 166 (1918). In the action *sub judice*, although the bid submitted by Goettle included unit prices for excavation for each of the three different sizes of piers, the contract specified that only one of the three sizes would be designated by TVA for actual construction. Once the selection was made by TVA, the prices submitted for the other sizes obviously had no applicability. The unit prices submitted by Goettle and accepted by TVA for excavation through soil, chert, and rock for the selected pier size constituted a "total excavated price per linear foot of pier foundation" and included all excavation work necessary to construct a pier that size. Compensation for excavation to construct that pier size, contrary to Goettle's argument, was not to be determined by the diameter of the shaft which was excavated in order to construct a pier of the required size.

Goettle was required under the contract to take whatever steps necessary to assure that the concrete piers were constructed in accordance with all contract specifications, including the installation of temporary casings and related excavation where necessary. The contract contemplated that in constructing a pier with a diameter of 66 inches in soil and chert and 60 inches in rock, plaintiff, if necessary, would have to excavate a shaft up to six inches greater in diameter to install temporary casing. Thus, the possibility of a need for "overexcavation" was contemplated by the contract and anticipated by the parties to the contract. Goettle has been fully paid according to the bid and accepted unit price for all excavation required for the pier size selected and actually constructed. It is not entitled to any increased compensation. TVA did nothing more than require Goettle to do the work provided for under the contract in conformity with the contract specifications. *See United States v. Spearin, supra, ITT Artic Servs., Inc. v. United States*, 207 Ct.Cl. 743, 524 F.2d 680 (1975); *T.A. Loving & Co. v. United States*, 132 Ct.Cl. 378, 132 F.Supp. 250, *cert. denied* 350 U.S. 884, 76 S.Ct. 136, 100 S.Ct. 779 (1955). "It would be a novel doctrine indeed to allow a contractor an adjustment ... for the reason that he was compelled to live up to his contract commitments." *Olin Mathieson Chemical Corp. v. United States*, 179 Ct.Cl. 368, 407 (1967).

Additionally, with regard to Goettle's argument that the weathered rock encountered during construction constituted a differing site condition, TVA has never contended that Goettle must bear the cost of excavation through the unanticipated weathered rock. In fact, TVA has paid Goettle, at the linear foot unit price for 60 inch rock excavation, for all of the excavation actually performed by Goettle.

■ Additionally, although it is conceded that the weathered rock actually present on the site differed considerably from that shown by the data provided to Goettle by TVA, Paragraph 4.3.1 of the specifications expressly stated that the subsurface information provided by TVA was "not guaranteed by TVA to represent all conditions that will be encountered in constructing the drilled pier foundations at the site." TVA

fully disclosed all the information it had in regard to the site conditions in the subsurface investigation reports and had no further obligation with respect to such conditions. The reports given by TVA to Goettle noted the presence of weathered rock, although in smaller quantities than that actually encountered, and thus put the contractor on notice of the presence of such materials. The presence of such rock was thus not unanticipated. Accordingly, TVA is entitled to summary judgment as to this issue.

II. *Counts II and III—Plaintiff's Claims Based On "Unjust Enrichment and Quantum Meruit."*

A claim based on unjust enrichment is one for recovery based on a quasi—or implied-in-law contract. *See, e.g., Bloomgarden v. Coyer,* 479 F.2d 201, 210 (D.C.Cir.1973); *City of Chattanooga v. Louisville & N.R.R.,* 298 F.Supp. 1, 9 (E.D. Tenn.1969), *aff'd* 427 F.2d 1154 (6th Cir.), *cert. denied,* 400 U.S. 903, 91 S.Ct. 141, 27 L.Ed.2d 140 (1970); *Herrmann v. Gleason,* 126 F.2d 936, 940 (6th Cir.1942). It is well established that no quasi—or implied-in-law contract can come into existence with respect to a given subject matter where there exists an express contract with respect to that subject matter. *See, e.g., United States Steel Corp. v. United States,* 210 Ct.Cl. 228, 536 F.2d 921, 928 (1976). It is equally well settled that the existence of an express contract precludes the implication of a contract in regard to the same subject matter. In such a situation, the terms of the express contract are controlling. *See, e.g., National Trailer Convey, Inc., v. United States,* 170 Ct.Cl. 823, 345 F.2d 573, 576 (1965); *United States v. Ahearn,* 231 F.2d 353, 356 (1955); *Schwob v. International Water Corp.,* 136 F.Supp. 310, 314 (D.Del.1955).

In the action *sub judice,* the express contract clearly controls the rights of the parties to this litigation. As a result, Goettle cannot recover additional compensation under a claim based upon unjust enrichment or quantum meruit. Accordingly,

TVA is entitled to summary judgment in regard to Counts II and III of the complaint.

An order in conformity with this opinion shall issue.