**ENVIROTECH CORPORATION, Plaintiff,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant.**

Civ. A. No. 86–0285–P(J).

United States District Court, W.D. Kentucky, Paducah Division.

Sept. 28, 1988.

Paul W. Killian and Mark A. Sgarlata, Vienna, Va., and Earl T. Osborne, Paducah, Ky., for plaintiff.

Edward S. Christenbury, Gen. Counsel, Edwin W. Small, Asst. Gen. Counsel, Clay S. Davis, Jr., John P. Kernodle and David N. Garst, Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

JOHNSTONE, Chief Judge.

This matter is before the court on defendant Tennessee Valley Authority ("TVA")'s Motion for Summary Judgment. Plaintiff Envirotech Corporation ("Envirotech") brought suit against TVA to recover $4,300,086.82 in additional costs in incurred while constructing pollution control devices for TVA. Jurisdiction is proper pursuant to 28 U.S.C. § 1337 (1986) and 41 U.S.C. § 609(a)(2) (1988). Because Envirotech did not comply with the time requirements in the contract for submitting claims, its claim is barred, and the court will grant summary judgment to TVA.

## FACTS

This dispute arises out of work Envirotech performed for TVA from 1978 to 1981 at TVA's Shawnee Steam Plant in Paducah, Kentucky. TVA was compelled by a consent decree entered in *Tennessee Thoracic Society v. Aubrey Wagner*, C.A. No. 77–3286–NA–CV (M.D.Tenn.1978), to reduce the output of fly-ash particulates and sulfur dioxide at Shawnee. It engaged Envirotech to design and construct ten "baghouses," pollution control devices designed to reduce the output of fly-ash. Envirotech was to be paid $53,218,000, plus a bonus of up to $500,000 if it finished the job early.

During the construction period, Envirotech encountered delay due to weather and labor problems. There were changes in the contract and unforseen subterranean impediments, creating further delay. TVA extended the contract completion deadline for 49 days. Nevertheless, Envirotech completed the final baghouse on June 8, 1981, 85 days before the original deadline, and 134 days before the extended deadline. In an action before this court, Envirotech was awarded $425,000 for completing the final unit early. *Envirotech Corp. v. Tennessee Valley Authority*, No. C84–0007 P(J) (W.D.Ky. May 21, 1985).

In March, 1985, Envirotech submitted a claim under the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.* (1988). Envirotech asserted that it had been required to accelerate its work, causing it to incur increased labor and equipment costs. The TVA contracting officer denied the request because, among other things, Envirotech did not file its claim within the time limits set out in the contract. Envirotech then filed this action, asking for relief under the contract or, in the alternative, in quantum meruit.

## MOTION FOR SUMMARY JUDGMENT

A court must grant summary judgment when there are no issues of material fact and one party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The issue of fact must be a real dispute; "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no such issue here.

█ The contract between TVA and Envirotech required Envirotech to submit any claims within 30 days of the event causing the expense or the adverse decision. The clause entitled "Claims and Protests by Contractor" states:

If the Contractor claims compensation for any damages alleged to have been sustained by reason of any act or omission of TVA, or any of its agents, or takes exception to any ruling, measurement, classification, calculation, or any definition or other act of TVA, he shall, within 30 days after the arising of the cause for any such claim or protest, file, with the Contracting Officer, a formal written protest including an itemized statement of the details and amount of such damage and claim, or be considered as having waived all claims on account of the matter excepted to or complained of,

and shall not be entitled to any payment on account thereof.

Envirotech made no written request for additional compensation until March 25, 1985, over six and one-half years after the first delay that might entitle it to a claim. Envirotech has offered no excuse for not complying with the contract, only stating that some of TVA's employees were aware of the delays. Knowledge of facts which might give rise to a claim, even if possessed by employees whose knowledge can be deemed to the employer, is not sufficient. TVA had to know that Envirotech was actually making a claim. *Gulf & Western Industries, Inc. v. United States,* 639 F.2d 732, 737 (Ct.Cl.1980). When Envirotech made no written request within 30 days, TVA was entitled to believe no such claim would be forthcoming. *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1395 (Fed.Cir.1987).

The prejudice to TVA from Envirotech's delay demonstrates why the contract contains a time limit on claims. Six years after the events in question, records have been lost or destroyed, witnesses have changed jobs or moved and become difficult to locate, and memories have faded, making the suit more difficult to defend. Even if the court did not find the claim barred by the terms of the contract, it would be disposed to find the claim barred by laches. *Association of Data Processing, Inc. v. Federal Home Loan Bank of Cincinnati,* 421 F.Supp. 384, 389 (S.D.Ohio 1976). Further, if Envirotech had submitted a timely claim, TVA may have been able to find less costly means to remedy the delay.

■ Envirotech principal contention is that it is entitled to additional compensation under the doctrine of constructive acceleration. Constructive acceleration is present when (1) the contractor encountered an excusable delay entitling him to a time extension; (2) the contractor requested an extension, (3) the request was refused, (4) the contractor was ordered to accelerate its work, that is, to finish the project as scheduled despite the excused delays, and (5) the contractor actually accelerated work. *Hawaiian Dredging & Construction Co.,* 84–2 B.C.A. (CCH) ¶ 18,347 (1985).[1]

■ Envirotech may not recover under such a theory. The basis for recovering for constructive acceleration is that the contractor encountered an *excusable* delay but the contracting officer would not grant a time extension to recover the lost time. The TVA contracting officer excused some delays and granted 49 extra days to complete the work. He called the delays for which Envirotech did not receive extensions *unexcusable.* If Envirotech objected to that determination, it could have challenged the rulings under the Claims and Disputes Clause. It cannot now, six years later, litigate whether the delays were or were not excusable. *Painter & Painter, Inc. v. Tennessee Valley Authority,* No. CIV–1–82–257 (E.D.Tenn. Aug. 11, 1983).

Even if Envirotech were excused from timely filing of its claims, it is apparent that it worked at an accelerated pace to earn the maximum bonus under the contract, not because TVA ordered it to do so. In 1979, TVA wrote to Envirotech expressing its concern about the delays and asking what measures Envirotech would take to regain the lost time. Envirotech replied in a June 26, 1979 letter that the delays did not effect the contractual schedule, but only Envirotech's own:

> Envirotech's schedule is an *"accellerated* [sic] *schedule"* designed to capture the maximum bonus under the contract yet comply with the unit tie in completion dates and the contract completion date of September 1, 1988.... In short, there is no *TVA Schedule* impact but only a redefinition of the EVT *"accellerated* [sic] *schedule."*

[emphasis supplied].

Not only does it appear from this letter that the delays did not cause difficulty meeting TVA's schedule, but the letter also

---

1. Some courts have not required a contractor to request an extension when it is certain the request will be refused. *Norair v. United States,* 666 F.2d 546 (Ct.Cl.1981). Envirotech fails either standard, though, because it cannot meet the first or fourth standard listed above.

shows that Envirotech was expecting to be compensated for early finishing under the bonus provision of the contract.

 Envirotech's claim for compensation in quantum meruit, is without merit. A party may not recover in quantum meruit if that aspect of the transaction is governed by a contract, and the contract is not breached. *See, e.g., United States Steel v. United States,* 536 F.2d 921, 928 (Ct.Cl. 1976); *Richard Goettle, Inc. v. Tennessee Valley Authority,* 600 F.Supp. 7, 11 (N.D. Miss.1984). Envirotech must have realized that principle, for it did not argue for quantum meruit in its memorandum.

### CONCLUSION

The contract between Envirotech and TVA bars claims that are not timely filed. Envirotech has presented no reason, including constructive acceleration, that the court should not enforce the contract.

An appropriate order will accompany this memorandum opinion.